UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER RODRIGUEZ,

                    Plaintiff,

        - against -

CAPTAIN COHALL, ET AL.,

                    Defendants.

21-cv-1810 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

        The pro se plaintiff, Peter Rodriguez, brought this action
pursuant to 42 U.S.C. § 1983 alleging that the defendants,
Captain Cohall, Correction Officer Gadsen, Correction Officer
Felipe, and the City of New York, violated his civil rights. The
defendants now move to dismiss the complaint pursuant to Federal
Rules of Civil Procedure 12(b)(6) and 41(b). For the following
reasons, the defendants' motion to dismiss is **granted in part
and denied in part.**

I.

        The following allegations are taken from the complaint and
accepted as true for the purposes of resolving the motion to
dismiss. On or about September 24, 2020, while the plaintiff was
incarcerated as a pretrial detainee on Rikers Island, correction
officers were involved in an altercation with another inmate
that resulted in the use of chemical agents. Compl. at 4. The
plaintiff was close to this altercation and alleges that the

officers' use of chemical agents against the other inmate
aggravated the plaintiff's asthma and caused the plaintiff to
experience symptoms including chest pain, breathing
difficulties, and blurred vision. Id. The plaintiff notified
Cohall, Gadsen, and Felipe, who were the correction officers on
the scene at the time, that he required immediate medical
treatment to address the symptoms that he was experiencing. Id.
The correction officers dismissed the plaintiff's requests and
failed to provide the plaintiff with access to medical
treatment. Id. at 4-5. The plaintiff alleges that this denial of
access to medical care caused him "unnecessary pain and
suffering" and constituted excessive force and deliberate
indifference to his medical needs. Id. at 5. The plaintiff
further alleges that there is a "continued" and "widespread"
custom amongst New York City Department of Corrections ("DOC")
officers to deny inmates necessary medical care. Id. at 6-7. The
plaintiff contends that the City is aware of this widespread
practice, which is the result of the City's failure to train and
supervise adequately its correction officers. Id.

The defendants now move to dismiss the complaint for
failure to prosecute and for failure to state a claim.

## II

The defendants contend that the complaint should be
dismissed with prejudice for failure to prosecute. Under Federal

Rule of Civil Procedure 41(b), if "the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Courts consider the following factors when determining whether to dismiss a complaint pursuant to Rule 41(b):

> 1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996).[1]

The defendants argue that all five factors weigh in favor of dismissal because: (1) at the time that the motion to dismiss was filed, the plaintiff had failed to notify the Court of his updated address, which caused these proceedings to be delayed; and (2) the plaintiff failed to file an amended complaint in violation of the Court's orders. The defendants' arguments are without merit.

First, although it appears that the plaintiff changed his address without notifying the Court at some point before the defendants filed their motion to dismiss, the defendants were apparently able to determine the plaintiff's address and serve

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

their motion papers on the plaintiff. See ECF No. 28. Shortly
thereafter, the plaintiff filed his opposition to the
defendants' motion to dismiss and has since kept the Court
apprised of his subsequent changes of address. See ECF Nos.
33-34. Accordingly, the defendants cannot claim credibly that
the plaintiff's failure to notify them as to his change of
address and any resulting modest delay of these proceedings
prejudiced them in any meaningful way. Moreover, it would be
inappropriate to dismiss the plaintiff's claims for failure to
prosecute because he responded to the defendants' motion and is
now actively prosecuting his claims and keeping the Court and
the parties apprised of any changes of his address.

Second, the defendants' argument that the plaintiff's
failure to file an amended complaint constituted a violation of
the Court's orders fails. These orders were simply giving the
plaintiff an opportunity to amend his complaint if he wanted to
do so and were not commands that the plaintiff amend his
complaint or have his case dismissed. See ECF Nos. 20, 23.

In sum, the plaintiff has not failed to prosecute this
action or litigated this action in a way that violated any order
of this Court. It would therefore be unwarranted and unfair to
dismiss the plaintiff's claims on this basis, with or without
prejudice. Finally, the defendants have not been prejudiced by

the plaintiff's conduct. Accordingly, the defendants' motion to dismiss the complaint for failure to prosecute is denied.

### III

The defendants move to dismiss the complaint for failure to state a claim. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession

or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002).

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see Benavides v. Grier, No. 09-cv-8600, 2011 WL 43521, at *1 (S.D.N.Y. Jan. 6, 2011).

The Court has reviewed the plaintiff's complaint and construes it to raise federal claims arising under 42 U.S.C. § 1983 for (1) deliberate indifference to medical needs in violation of the Fourteenth Amendment; (2) excessive force in violation of the Fourteenth Amendment; and (3) municipal liability against the City of New York. The Court also has an obligation to consider potential state law claims raised in a pro se plaintiff's complaint even where, as here, the plaintiff appears only to have referenced explicitly federal causes of action. See Taylor v. Quayyum, No. 16-cv-1143, 2021 WL 6065743,

at *4 (S.D.N.Y. Dec. 21, 2021) (citing McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 157-58 (2d Cir. 2017)). Accordingly, the Court also construes the plaintiff's complaint to raise the following state law claims: (1) battery; (2) assault; and (3) intentional infliction of emotional distress. See id.

### A.

The defendants move to dismiss all the plaintiff's claims on the basis that the plaintiff has failed to exhaust all administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). See 42 U.S.C. § 1997e(a). The PLRA provides that "no action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id.

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." Williams v. Correction Officer Prianto, 829 F.3d 118, 122 (2d Cir. 2016). "Accordingly, inmates are not required to specifically plead or demonstrate exhaustion in their complaints." Id. "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it

is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." Id.

The defendants advance a conclusory argument that the plaintiff's alleged failure to exhaust relevant DOC administrative remedies is clear from the face of the complaint. See Motion at 9 (citing Compl. at 8). In his complaint, the plaintiff alleged in relevant part that "staff complaints are not subjected to [the] grievance process. In addition to N.Y.C. D.O.C. employees intimidating me[,] 311 complaint was made." Compl. at 9. The defendants contend that these allegations demonstrate that the plaintiff failed to comply with a DOC directive regarding inmate grievance procedures.

The defendants' argument fails. First, the defendants cite the entirety of a DOC directive in support of their argument, but do not attempt to explain which specific provisions of the directive the plaintiff allegedly failed to comply with. In any event, it is far from clear from these allegations that the plaintiff failed to exhaust all relevant administrative remedies or that exhaustion was not excused. See, e.g., Hubbs v. Suffolk County Sherriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015) (explaining that the exhaustion requirement may be excused "if the plaintiff can demonstrate that other factors — for example, threats from correction officers — rendered a nominally available procedure unavailable as a matter of fact."). Because

the defendants' entitlement to a failure to exhaust administrative remedies affirmative defense is not clear from the face of the plaintiff's complaint, the defendants' motion to dismiss the complaint on this basis is denied.

**B.**

The defendants argue that the plaintiff's claim for deliberate indifference to medical needs should be dismissed. A claim for deliberate indifference, when brought by a pretrial detainee, is "governed by the Due Process Clause of the Fourteenth Amendment." Taylor, 2021 WL 6065743, at *6 (quoting Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017)). A claim for deliberate indifference to medical needs has two elements. "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." Spavone v. New York State Dep't of Correctional Servs., 719 F.3d 127, 138 (2d Cir. 2013). "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." Id. "The second element of a deliberate indifference claim – often referred to as the 'mens rea prong' – is to be assessed objectively." Taylor, 2021 WL 6065743, at *6.

With respect to the first element, "determining whether a deprivation is an objectively serious deprivation entails two inquiries." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). "The first inquiry is whether the prisoner was actually

deprived of adequate medical care." Id. If so, the Court
considers "whether the inadequacy of medical care is
sufficiently serious." Id. at 280. "If the unreasonable medical
care is a failure to provide any treatment for an inmate's
medical condition, courts examine whether the inmate's medical
condition is sufficiently serious." Id. "Factors relevant to the
seriousness of a medical condition include whether a reasonable
doctor or patient would find [it] important and worthy of
comment, whether the condition significantly affects an
individual's daily activities, and whether it causes chronic and
substantial pain." Id.; see also Williams v. City of New York
Dep't of Corr., No. 19-cv-9528, 2020 WL 3893929, at *4 (S.D.N.Y.
July 10, 2020) (medical needs are "sufficiently serious" if they
present a "condition of urgency, one that may produce death,
degeneration, or extreme pain").

Here, the plaintiff alleges that he was completely denied
medical care following his exposure to chemical agents. However,
the plaintiff has failed to allege that he suffered an injury
that was sufficiently serious to state a claim for deliberate
indifference to medical needs. The plaintiff alleged that the
chemical agent aggravated his asthma and that he experienced
"breathing difficulties, chest pains, blurry vision, dizzyness
[sic], skin burning/irritation, trauma, [and] anxiety." Compl.
at 4. Courts in this Circuit have found consistently that

plaintiffs who complained of similar injuries arising out of exposure to chemical agents while in custody failed to plead adequately that they suffered sufficiently serious injuries. See, e.g., Taylor, 2021 WL 6065743, at *6 (observing that the "temporary discomfort caused by pepper spray does not constitute a sufficiently serious objective injury;" concluding that alleged injuries of "restricted breathing, [coughing], sneezing, burning of eyes and throat," skin irritation, and mental anguish following exposure were insufficient to state a claim for deliberate indifference); Williams, 2020 WL 3893929, at *4-5 (plaintiff with asthma whose exposure to chemical agents caused him to experience breathing difficulties and chest pain failed to plead a sufficiently serious injury); McArdle v. Ponte, No. 17-cv-2806, 2018 WL 5045337, at *4 (S.D.N.Y. Oct. 17, 2018) (plaintiff who alleged that pepper spray exposure caused him "temporary vision loss, respiratory difficulties, and skin irritation" did not plead a sufficiently serious injury); Wright v. Trapasso, No. 15-cv-4428, 2018 WL 4688940, at *11 (E.D.N.Y. Sept. 28, 2018) (the plaintiff's "incredible discomfort as a result of the pepper spray does not rise to the level of seriousness required for a constitutional violation.").

In sum, the plaintiff has not alleged adequately that he suffered sufficiently serious injuries resulting from the September 24, 2020 incident. Accordingly, the plaintiff's claim

for deliberate indifference to medical needs is **dismissed without prejudice to replead**.

The defendants do not advance any remaining arguments as to why the plaintiff's other causes of action should be dismissed for failure to state a claim. Accordingly, the plaintiff's claims for excessive force, municipal liability, assault, battery, and intentional infliction of emotional distress are not dismissed.

CONCLUSION

The Court has considered all of the parties' remaining arguments. To the extent not specifically addressed above, they are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted in part and denied in part**.

The plaintiff may file an amended complaint within 28 days of the date of this Opinion. The plaintiff is advised that the amended complaint will replace, rather than supplement, the current complaint. An amended complaint form, along with the unpublished decisions cited in this Opinion, are attached to this Opinion.

If the plaintiff does not file an amended complaint:

- The current dismissal of his claim for deliberate indifference to medical needs will be with prejudice;

- The plaintiff's remaining federal and state law claims will proceed;

- The defendants must answer the plaintiff's current complaint 14 days after the deadline for filing any amended complaint; and

- The parties must submit a Rule 26(f) report 21 days after the defendants file their answer.

If the plaintiff files an amended complaint, the defendants must move or answer with respect to the amended complaint within 21 days after it is filed. The defendants may move to dismiss any amended complaint without a pre-motion conference.

If the defendants move to dismiss the amended complaint, the plaintiff's opposition to the motion to dismiss is due 21 days after the defendants serve the motion to dismiss on the plaintiff. The defendants' reply is due 10 days after the plaintiff files his opposition brief.

If the plaintiff files an amended complaint and the defendants answer, then the parties should file a Rule 26(f) report 21 days after the defendants file their answer.

The Clerk is directed to close all pending motions. The Clerk is further directed to mail a copy of this Opinion and its attachments to the plaintiff and to note service on the docket.

**SO ORDERED.**

Dated:      New York, New York
            April 26, 2022

                                    John G. Koeltl
                            United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Peter Rodriguez
_____

_____
Write the full name of each plaintiff.

No. _21cv1810_____
(To be filled out by Clerk's Office)

-against-

Captain Cohall
_____
Correction Officer Gadsen
_____
Correction Officer Felipe
_____
City of New York
_____
Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

AMENDED
COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.     LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                Middle Initial            Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                              State                    Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

## V.     STATEMENT OF CLAIM

Place(s) of occurrence:  _____

Date(s) of occurrence:  _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

2011 WL 43521
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Gerson BENAVIDES, Plaintiff,

v.

C.O. GRIER, J. # 17569 (Shift 4–12AM), et al., Defendants.

No. 09 Civ. 8600(JGK).
|
Jan. 6, 2011.

***MEMORANDUM OPINION AND ORDER***

JOHN G. KOELTL, District Judge.

**\*1** The plaintiff, Gerson Benavides, sued the New York City Department of Correction (the "DOC") and two of its personnel, Corrections Officer Grier and Captain Marshall (collectively, the "individual defendants"), under 42 U.S.C. § 1983 for deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth or Fourteenth Amendment. After the plaintiff amended his complaint twice, the defendants moved to dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Id.*

When faced with a *pro se* complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (brackets and internal quotation marks omitted). "Even in a *pro se* case, however, ... threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Id.*

## II.

The following allegations are assumed to be true for the purposes of this motion.

As of August 12, 2009,[1] the plaintiff was incarcerated at the Anna M. Kross Center ("AMKC") at Rikers Island. (Second Am. Compl. ("SAC") 3.) At approximately 5:30 a.m. that morning, while getting breakfast in the unit day room, another inmate "grabbed [him] and threw [him] to the floor." (*Id.*) The plaintiff injured his right knee and "laid on the floor in pain for fifteen minutes." (*Id.*) A corrections officer "did not assist for several minutes while [the plaintiff] laid in pain on the floor." (*Id.*) "[T]he captain was called to the area and was trying to say [the plaintiff] slipped maybe on some jelly." (*Id.*)

**\*2** From these injuries, the plaintiff "has CDL ligaments from [his] right knee broke[n], and back pain." (*Id.*) The plaintiff states that it took approximately three months to get an MRI and five months to get surgery performed on his right knee. (*Id.*)

### III.

This Order will treat the individual defendants and the DOC in turn.

### A.

To plead an Eighth or Fourteenth Amendment[2] violation arising out of inadequate medical care, a plaintiff must allege (a) an "actual[ ] deprivation of adequate medical care" that is "sufficiently serious" and (b) that the charged defendant "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006). It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir.2010) (internal quotation marks omitted).

As to the first prong of the deliberate indifference test, the plaintiff has failed to allege any serious deprivation of adequate medical care that can be attributed to the individual defendants. As a preliminary matter, it is not clear that such an injury is sufficiently serious to trigger constitutional protection in the ordinary case. "[C]ourts in this circuit have almost uniformly found similar knee injuries to be insufficient to trigger Eighth Amendment protection and to support a deliberate indifference claim." *Moody v. Pickles,* No. 03 Civ. 850, 2006 WL 2645124, at \*6 (N.D.N.Y. Sept. 13, 2006); *see also Johnson v. Wright,* 477 F.Supp.2d 572, 575–76 (W.D.N.Y.2007), *aff'd,* 324 Fed. Appx. 144 (2d Cir.2009) (summary order) (collecting cases).

Moreover, the SAC does not allow for an inference that either individual defendant deprived him of adequate medical care. Assuming that the unnamed corrections officer and captain identified in the complaint are defendants Grier and Marshall, respectively, the most that the complaint can be read to allege is that it took Grier "several minutes" to respond to the plaintiff's knee injury. Although there may be some situations in which a delay of mere minutes can constitute a constitutionally significant deprivation of medical care, *see Allen v. N.Y.C. Dep't of Corr.,* No. 06 Civ. 7205, 2010 WL 1644943, at \*13–14 & n. 12 (S.D.N.Y. Mar. 17, 2010), *report and recommendation adopted,* No. 06 Civ. 7205, 2010 WL 1631404 (S.D.N.Y. Apr. 19, 2010), in general "a wait this brief cannot constitute deliberate indifference" to a relatively minor injury, *Ravenell v. Van der Steeg,* No. 05 Civ. 4042, 2007 WL 765716, at \*4 (S.D.N.Y. Mar. 14, 2007). A short delay may be sufficient if the plaintiff can show "intentional efforts on the part of defendants to delay ... access to medical care at a time [when the plaintiff] was in extreme pain," *Archer v. Dutcher,* 733 F.2d 14, 16 (2d Cir.1984), but the complaint lacks any allegation of intent on either defendant's part to delay access to medical care.

**\*3** As to the alleged delay in providing an MRI and knee surgery, again, courts have routinely denied claims based on similar or longer waits. *See Johnson,* 477 F.Supp.2d at 575–76 (collecting cases). Furthermore, the complaint does not allege that either individual defendant was personally involved in any way with the timing of his medical treatment subsequent to the day room incident. *See Farid,* 593 F.3d at 249.

With respect to the second prong of the deliberate indifference test, the plaintiff does not allege that either individual defendant was "actually aware of a substantial risk that serious inmate harm will result." *Salahuddin,* 467 F.3d at 280. Instead, he conclusorily states that the defendants were deliberately indifferent. Bare legal conclusions such as this do not suffice in the absence of adequate factual legal allegations. *See Iqbal,* 129 S.Ct. at 1949–50.

Accordingly, the complaint must be dismissed as to the individual defendants.

## B.

Along with the individual defendants, the plaintiff named the DOC as a defendant. "As an agency of the City, the Department of Corrections is a non-suable entity." *Brickhouse v. City of N.Y.,* No. 09 Civ. 9353, 2010 WL 3341845, at *2 (Aug. 16, 2010); *accord Renelique v. Doe,* No. 99 Civ. 10425, 2003 WL 23023771, at *6 (S.D.N.Y. Dec. 29, 2003) (collecting cases). For that reason alone, the claim against the DOC must be dismissed.

Had the plaintiff named the City of New York as a defendant, dismissal would still be required. The only plausible ground for liability against the city would be municipal liability under *Monell v. Department of Social Services,* 436 U.S. 658 (1978). But *Monell* "does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of N.Y.,* 459 F.3d 207, 219 (2d Cir.2006). Because the plaintiff has not alleged an underlying constitutional violation, there can be no liability under *Monell. Id.* In any event, the plaintiff has not alleged any facts connecting his injury to any training, policy, or custom on the part of the City of New York.

## CONCLUSION

The defendants' motion to dismiss the Second Amended Complaint is **granted.** Because the Court twice gave the plaintiff the opportunity to amend his complaint, directing him to state with specificity how each defendant was involved in the alleged constitutional deprivations, the Second Amended Complaint is **dismissed with prejudice.** The Clerk is directed to close Docket No. 27 and to enter judgment dismissing the Second Amended Complaint and closing the case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 43521

## Footnotes

1    In the SAC, the plaintiff states variously that the incidents giving rise to his claim occurred in August 2008 and August 2009. (SAC 2–3.) The Court will assume, as do the defendants (Defs.' Mem. 1 n. 1), that the incidents occurred in August 2009.

2    The plaintiff has not stated whether he is a convicted prisoner, in which case his claims are analyzed under the Eighth Amendment, or a pretrial detainee in state custody, in which case his claims are analyzed under the Due Process Clause of the Fourteenth Amendment. See *Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir.2009). In either case, the standards to be applied are identical. *Id.* at 72.

**Benavides v. Grier, Not Reported in F.Supp.2d (2011)**

2011 WL 43521

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

McArdle v. Ponte, Not Reported in Fed. Supp. (2018)

2018 WL 5045337

2018 WL 5045337
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Peter MCARDLE, Plaintiff,

v.

Joseph PONTE, et al., Defendants.

17cv2806
|
Signed 10/17/2018

**Attorneys and Law Firms**

Welton Kemilious Wisham, The Law Office of Welton K. Wisham, New York, NY, for Plaintiff.

Agnetha Elizabeth Jacob, New York City Law Department, New York, NY, for Defendants.

OPINION & ORDER

WILLIAM H. PAULEY III, U.S.D.J

 **\*1**  Peter McArdle brings this federal civil rights action against the City of New York (the "City") and various New York City Department of Correction ("DOC") officials and officers. He challenges his conditions of confinement and also alleges excessive force claims arising out of his pre-trial detention. Defendants move to dismiss the Second Amended Complaint for failure to state a claim under Rule 12(b)(6). For the reasons that follow, Defendants' motion is granted.

BACKGROUND

The allegations in the Second Amended Complaint are presumed true for purposes of this motion. Between January 4 and March 9, 2017, McArdle was a pre-trial detainee housed on Rikers Island and transported on multiple occasions for court appearances to the Kings County Courthouse. He alleges, among other things, that he was forced to sleep on a concrete floor without adequate bedding, housed in overcrowded and unsanitary holding cells, and deprived of adequate food and water. (Complaint, ECF No. 30 ("Compl."), ¶¶ 104–140.)

McArdle's excessive force claims stem from two separate incidents in January 2017 when correction personnel deployed chemical "pepper spray" to de-escalate prisoner conflicts. (Compl. ¶¶ 141–199.) In both instances, McArdle was an innocent bystander in the vicinity where pepper spray was deployed. McArdle asserts that correction officers did not provide medical assistance even though he experienced temporary vision loss, respiratory difficulties, and skin irritation. (Compl. ¶¶ 173–179.) McArdle further claims that these alleged civil rights violations stem from the "customs, policies and practices" of the City of New York. (Compl. ¶ 282.)

On January 23, 2017, McArdle filed grievances for both chemical spray incidents, as well as "forced standing," through the DOC Inmate Grievance and Request Program ("IGRP"). (Compl. ¶ 201.) On January 30, 2017, after receiving no response, McArdle appealed to the IGRP Committee. (Compl. ¶ 205.) When he received no response to that request, he appealed directly to the DOC Central Office Review Committee ("CORC"). (Compl. ¶ 207.) Thereafter, he filed this action pro se. Prior to the initial pre-trial conference, McArdle retained counsel. At that conference, this Court discussed certain deficiencies in the

Complaint and McArdle elected to file an amended complaint. (ECF No. 15.) After the amended complaint was interposed, Defendants requested a pre-motion conference and submitted a letter describing why the amended pleading was insufficient to state a claim. (ECF No. 25.) Following a conference with the parties, McArdle was afforded one more opportunity to amend his complaint. (ECF No. 29.) On January 17, 2018, McArdle filed a Second Amended Complaint. (ECF No. 30.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court must construe all inferences in the plaintiff's favor. Gonzalez v. Hasty, 802 F.3d 212, 219 (2d Cir. 2015).

## DISCUSSION

**\*2**  This Court groups McArdle's grievances into the following categories: (1) conditions of confinement claims against individuals; (2) excessive force claims against individuals; (3) Monell claims; and (4) common law tort claims.

### I. Conditions of Confinement Claims

#### A. Exhaustion of Administrative Remedies

To establish individual liability under 42 U.S.C. § 1983, the challenged conduct must have "(1) been performed by a person acting under the color of state law [and] ... (2) deprived the plaintiff of his rights, privileges or immunities under the Constitution or the laws of the United States." Holmes v. City of New York, 2018 WL 4211311, at *3 (S.D.N.Y. Sept. 4, 2018) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) ). "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment." Darnell v. Piniero, 849 F.3d 17, 29 (2d Cir. 2017).

Defendants argue that McArdle did not exhaust his available administrative remedies before bringing a § 1983 claim concerning the conditions of his confinement, as required by the Prison Litigation Reform Act of 1995 ("PLRA"). 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011) (citation omitted). Although Defendants bear the responsibility to plead this affirmative defense, Jones v. Bock, 549 U.S. 199, 216 (2007), a court "may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement," Williams v. Corr. Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016).

The exhaustion requirement is mandatory, but a court may excuse the plaintiff's failure to exhaust when administrative remedies were "unavailable." Ross v. Blake, 136 S. Ct. 1850, 1856, 1859 (2016). Administrative procedures are "unavailable" when they are "not capable of use to obtain relief," despite being "officially on the books." Ross, 136 S. Ct. at 1859. The Supreme Court enumerated three scenarios where unavailability may stymie exhaustion of remedies. First, administrative procedures are unavailable when they "operate[ ] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross, 136 S. Ct. at 1859. Second, administrative procedures are unavailable where they are "so opaque that [they] become[ ], practically speaking, incapable of use," making them effectively "unknowable" to the ordinary prisoner. Ross, 136 S. Ct. at 1859. Third, administrative procedures are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860. In applying Ross, the Second Circuit has found remedies unavailable where procedures were incomprehensible for inmates transferring

McArdle v. Ponte, Not Reported in Fed. Supp. (2018)
Case 1:21-cv-01810-JGK   Document 38   Filed 04/26/22   Page 27 of 59
2018 WL 5045337

between facilities, Williams, 829 F.3d at 124, or where correction officers ignored their obligation to process grievances, Medina v. Napoli, 725 F. App'x 51, 54 (2d Cir. 2018) (summary order).

**\*3** To meet the PLRA exhaustion requirement, an inmate must take "all steps that the [prison grievance process] holds out, and do[ ] so properly." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Here, the relevant process is the four-step IGRP procedure. In the first step, an inmate submits a grievance to IGRP using the IGRP Statement Form. IGRP then has five business days to resolve the matter informally. The City of New York Dept. of Corr., Directive 3376, II(F) (Mar. 13, 2018). At the second step, an inmate may "appeal ... IGRP's informal resolution ... and request a formal hearing before the Inmate Grievance Resolution Committee." DOC Directive 3376, II(G). The third step in the process allows an inmate to "appeal the ... Committee's disposition to the facility's Commanding Officer." DOC Directive 3376, II(G). Finally, at the fourth step, an inmate may appeal the commanding officer's decision to the CORC. DOC Directive 3376, II(G). "The CORC's disposition shall constitute the Department's final decision on the inmate's request or grievance." DOC Directive 3376, II(G). Inmates may submit an appeal either through the "IGRP Disposition Form as appropriate" or "through the use of the IGRP Statement Form, noting that the inmate has not received a timely disposition and wishes to appeal to the next stage of the process." DOC Directive 3376, IV(D)(10)(a). "[I]n the event that the inmate does not receive a timely disposition at any stage of the IGRP process, the inmate may submit a request for an appeal (to proceed to the next step of the IGRP process) ...." DOC Directive 3376, IV(D)(10)(a) (emphasis added).

It is clear on the face of the Complaint that McArdle did not exhaust the IGRP grievance procedures pertaining to his claims about bedding, food, water, sanitation, and medical care. His grievance submitted on January 23 only refers to "chemical agent" spray in the intake area and "forced standing." (Compl. Ex. A.) He does not complain about any other particular conditions of his confinement beyond general assertions about "life threatening situations." (Compl. Ex. A.) McArdle has pleaded no facts to show that he tried to follow the IGRP system for these issues, and so those claims are dismissed.

McArdle's grievances concerning pepper spray and "forced standing" merit further discussion. On January 23, 2017, McArdle completed the first step by submitting a complaint concerning these issues to IGRP. When he received no response, he proceeded to the second step by requesting a hearing before the Committee on January 30, 2017. (Compl. ¶¶ 201, 205.) When that request was ignored, McArdle skipped the third step and appealed directly to the CORC. (Compl. ¶ 207.) Judges in this Circuit have consistently found that administrative remedies were not exhausted when an inmate omitted a step in the IGRP process. Albritton v. Morris, 2018 WL 1609526, at \*12 (S.D.N.Y. Mar. 29, 2018) ("[T]he grievance process is set up in such a way that any grievance ... must be appealed past the superintendent, up to CORC, for a final decision."); Gonzalez v. Vargas, 2017 WL 1082460, at \*3 (S.D.N.Y. Mar. 22, 2017); Mena v. City of New York, 2016 WL 3948100, at \*4 (S.D.N.Y. July 19, 2016).

However, this Court needs to consider whether McArdle's failure to exhaust may be excused because relief was unavailable to him. McArdle alleges that he never received any response to his grievances and that he "observed hundreds of inmates' grievances in the grievance box ... for days without being processed by the ... committee." (Compl. ¶ 233.) Although the Second Circuit has not extensively explored the Ross unavailability exception for administrative dead-ends, a defendant must "introduce[ ] ... facts to indicate that prison officials ... are consistently unwilling to provide relief to aggrieved inmates." Mena, 2016 WL 3948100, at \*4 (emphasis added) (quotation marks omitted) (quoting Ross, 136 S. Ct. at 1859). "[U]ntimeliness ... is not enough to demonstrate the unavailability of an administrative remedy." Mena, 2016 WL 3948100, at \*4.

Here, McArdle pleads facts that plausibly suggest that the lack of any response to his grievance was attributable to a larger problem at the facility—a grievance box stuffed with hundreds of unaddressed inmate complaints. And while IGRP allows an inmate to appeal at any stage if he receives no response, Ross is focused on "the real-world workings of prison grievance systems," not whether a remedy is pro forma "on the books." Ross, 136 S. Ct. at 1859. On these facts, this Court cannot conclude that McArdle's failure to exhaust administrative remedies was unexcused.

**\*4** Construing all inferences in McArdle's favor, the allegations in the Second Amended Complaint raise the issue that administrative relief may have been unavailable in practice. When an inmate has exhausted his remedies for some grievances,

Case 1:21-cv-01810-JGK   Document 38   Filed 04/26/22   Page 28 of 59

McArdle v. Ponte, Not Reported in Fed. Supp. (2018)

2018 WL 5045337

but not others, a court may allow some claims and dismiss the rest. Jones, 549 U.S. at 221. Accordingly, this Court addresses the substance of McArdle's allegations relating to his pepper spray and "forced standing" claims.

### B. The Pepper Spray and "Forced Standing" Claims

A pretrial detainee "may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." Darnell, 849 F.3d at 29. This test incorporates two components to prove a claim—(1) an "objective" prong showing that the "challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," and (2) a "subjective" prong, described as a "mens rea" requirement, showing that "the officer acted with at least deliberate indifference to the challenged conditions." Darnell, 849 F.3d at 29. The subjective prong requires a detainee to show that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35. Mere negligence will not suffice. Darnell, 849 F.3d at 36.

With respect to the objective prong, judges in this District have found that "the temporary discomfort caused by pepper spray or mace does not constitute a 'sufficiently serious' [objective] injury." Holmes, 2018 WL 4211311, at *7 (quoting Lewis v. Clarkstown Police Dep't, 2014 WL 1364934, at *7 (S.D.N.Y. Mar. 31, 2014) ). Further, McArdle has not plausibly alleged the subjective prong. Standing alone, McArdle's allegations that correction officers used pepper spray to de-escalate conflicts in the holding cell are insufficient to infer intentional or reckless behavior. As McArdle acknowledges in his pleading, he was a bystander in a crowded holding cell. (Compl. ¶ 168.) McArdle's allegation that pepper spray use was "reckless and indiscriminate," (Compl. ¶ 145), merely restates the subjective standard. " '[W]ide ranging deference' must be accorded to the actions of prison officials in responding to an inmate confrontation." Perez v. City of New York, 2017 WL 684186, at *2 (E.D.N.Y. Feb. 21, 2017) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986) ). McArdle's allegations suggest that his exposure to pepper spray, while unfortunate, was at most negligent or accidental. Those allegations are insufficient as a matter of law.

McArdle's claims concerning "forced standing" also fail the subjective prong. McArdle attributes his prolonged periods of standing to overcrowding in the holding cell. (Compl. ¶¶ 91, 122, 209.) While McArdle may have been uncomfortable, these allegations do not suggest that officers intentionally forced these conditions upon him or that they "knew, or should have known" that these conditions posed a serious risk to his health. Darnell, 849 F.3d at 30.

### C. Excessive Force Claims

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (citations omitted). The central concern is "whether the government action was rationally related to a legitimate government action." Edrei v. Maguire, 892 F.3d 525, 536 (2d Cir. 2018) (citation omitted). While liability for reckless use of force remains an open question in this Circuit, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472 (2015) (emphasis added). The plaintiff's claim must demonstrate that "the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 135 S. Ct. at 2473. Contextual factors bearing on the objective reasonableness of the force include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Edrei, 892 F.3d at 534 (quotation marks omitted) (citing Kingsley, 135 S. Ct. at 2473).

**\*5** The allegations undergirding McArdle's excessive force claim are indistinguishable from the allegations relating to his conditions of confinement claim. The addition of a conclusory assertion that a correction officer instigated one of the incidents does not save the claim. In view of the deference accorded to correction officers in exigent circumstances, McArdle has not plausibly alleged that the DOC officers' use of the pepper spray was unreasonable. Whitley, 475 U.S. at 321. McArdle's pleading

2018 WL 5045337

against the individual officers falls far below the demanding "purposeful or knowing" standard for "unreasonable" excessive force. Kingsley, 135 S. Ct. at 2473.

## D. Monell Claims

A plaintiff alleging municipal liability under § 1983 must plead and prove "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) denial of a constitutional right." Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 140 (2d Cir. 2010) (citation omitted) (quotation mark omitted). It is well settled that a municipality may not be held liable under a respondeat superior theory. Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 691, 695 (1978). Rather, liability must arise from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 695. A plaintiff may establish such a policy or custom by "(1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised deliberate indifference to the rights of the plaintiff and others encountering those subordinates." Roundtree v. City of New York, 2018 WL 1586473, at *13 (S.D.N.Y. Mar. 28, 2018) (quotation mark omitted) (citing McLennon v. City of New York, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016) ). "[W]holly conclusory" accusations originating from "isolated incidents that affected [the plaintiff]" are insufficient. Roundtree, 2018 WL 1586473, at *13. Rather, the pattern of conduct alleged must be "so widespread as to support an inference that it must have been known and tolerated by superiors." Jones v. Town of E. Haven, 691 F.3d 72, 82 (2d Cir. 2012).

McArdle does not allege any specific policy or practice to bolster his claims. He asserts broadly that the Defendants "[were], [had been], or should have been aware" of "long-standing, department-wide customs [and] policies" that denied him and other inmates their constitutional rights. (Compl. ¶ 277.) The Complaint further avers that the Defendants failed to "properly train and/or supervise [their] officers." (Compl. ¶ 276.) McArdle's glancing reference to a half dozen complaints by other inmates and a single newspaper article, (Compl. ¶ 189; Opposition, at 33), does not plead any widespread policy sanctioned by policymakers and imputable to the city, see Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); see also Holmes, 2018 WL 4211311, at *3 (explaining how allegations that other inmates had suffered similar treatment, combined with another inmate's filed grievance, was not a sufficient pattern of behavior to infer municipal liability).

McArdle's unadorned accusations fail the "rigorous standards of culpability and causation" that apply to municipal liability claims based on a failure to train. Matsusick v. Erie Cty. Water Auth., 757 F.3d 31, 73 (2d Cir. 2014). His conclusory assertions that municipal actors knew about civil rights violations do not amount to a pattern of conduct demonstrating "deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 60 (2011). In fact, McArdle undercuts his claim by citing DOC Policy Directives that promote the conservative use of chemical agents. (Compl. ¶¶ 183, 185, 191.)

 **\*6**  "A § 1983 claim against ... an official sued in his official capacity ... cannot be sustained unless the plaintiff shows that the violation of [his] federal rights was the result of a municipal custom or policy." Lore v. City of Syracuse, 670 F.3d 127, 168 (2d Cir. 2012). Because McArdle has not established any such pattern, all claims against the individual Defendants in their official capacities are also dismissed. Lore, 670 F.3d at 168.

## E. State Law Tort Claims

As a threshold matter, "federal courts entertaining state-law claims against ... municipalities are obligated to apply the [state] notice-of-claim provision." Felder v. Casey, 487 U.S. 131, 151 (1988). McArdle's state law tort claim against the City for intentional infliction of emotional distress is dismissed because he failed to serve a notice of claim. See NY. Gen. Mun. Law § 50–c; Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999). McArdle's intentional infliction of emotional distress claim against the individual Defendants is deemed abandoned because he failed to respond to Defendants' arguments in opposing this motion. Lipton v. Cty. of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004).

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint is granted. Having amended his Complaint twice as a result of extensive pre-motion proceedings, this Court dismisses the Second Amended Complaint with prejudice. [1] The Clerk of Court is directed to terminate the motion pending at ECF No. 40 and mark this case as closed.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 5045337

**Footnotes**

1    <u>See</u> DigitAlb, Sh.a v. Setplex, LLC, 284 F. Supp. 3d 547, 556–57 (S.D.N.Y. 2018) (citation and quotation marks omitted) ("Courts have dismissed claims with prejudice on the basis that the plaintiff has already had an opportunity to replead after specific warnings as to a complaint's deficiencies.").

**End of Document**                                             © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 6065743
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Roy TAYLOR, Plaintiff,

v.

Rikers C.O. QUAYYUM, and City of New York, Defendants.

1:16-cv-1143-GHW
|
Signed 12/21/2021

**Attorneys and Law Firms**

Roy Joaquin Taylor, East Elmhurst, NY, Pro Se.

Amanda Marie Rolon, New York City Law Department Office of the Corporation Counsel, New York, NY, for Defendant City of New York.

<u>MEMORANDUM OPINION & ORDER</u>

GREGORY H. WOODS, United States District Judge:

**I. INTRODUCTION**

**\*1** On January 25, 2016, Roy Taylor, a pretrial detainee on Rikers Island, was injured by the blowback of a correction officer's unreasonable use of pepper spray. Correction Officer Quayyum ("C.O. Quayyum") was cursed out by an inmate. In response, the officer sprayed him with pepper spray. Because Mr. Taylor was near the targeted inmate, the pepper spray afflicted Mr. Taylor as well. The exposure caused him to cough, made it difficult for him to breathe, and burned his eyes and skin.

Mr. Taylor, acting *pro se*, filed this civil rights lawsuit under 18 U.S.C. § 1983, alleging that C.O. Quayyum used excessive force and was indifferent to his medical needs. Mr. Taylor does not allege that he was the intended target of the pepper spray. However, because C.O. Quayyum's use of the pepper spray was intentional and unreasonable, Mr. Taylor has adequately pleaded an excessive force claim against C.O. Quayyum.

**II. BACKGROUND**

**a. Facts** [1]

Plaintiff is a pretrial detainee at Rikers Island in New York City. He was housed at Rikers' Robert N. Davoren Complex ("RNDC"). On January 25, 2016, while at RNDC, Plaintiff "was exposed to MK-9 pepper spray." Complaint ("Compl."), Dkt. No. 2, at 10. [2] A " 'trigger happy' C.O. Quayyum [ ] recklessly sprayed inmate Louis Dorsey unprovoked for cussing him out." *Id.* "[S]o much mace was used that it affected [Plaintiff] and ... other inmates and guards in the immediate area." *Id.* Plaintiff "suffered restricted breathing, caoughing [sic], sneezing, burning of eyes and throat and skin erritation [sic]" as a result of the pepper spray exposure. *Id.* The incident also caused him "mental anguish." *Id.* at 3.

According to Plaintiff, C.O. Quayyum's use of pepper spray violated the New York City Corrections Department's (the "D.O.C.") "chemical directive guideline[s]." *Id.* at 10; *Id.*, Ex. A (the "Chemical Agents Guidelines") at 27. Section V.A.3 of the Chemical

Agents Guidelines prohibits the use of hand-held chemical agents "[t]o force an inmate to comply with an officer's verbal orders" and "[t]o punish an inmate," among other proscriptions. Chemical Agents Guidelines at 27. Those prohibitions are subject to exceptions when an officer uses hand-held chemical agents "[t]o defend oneself" or "[t]o defend another employee, inmate or visitor." *Id.* at 26.

After being sprayed, Plaintiff "and others were denied medical treatment and ordered to line up." *Id.* at 15. [3] Plaintiff and other inmates were then "escorted" back to their units and "denied medical treatment." *Id.* Plaintiff alleges that C.O. Quayyum "failed to treat [Plaintiff] and covered [the pepper spray incident] up by returning [Plaintiff] and others to unit." *Id.*

### b. Procedural History

**\*2** Plaintiff was arrested by the New York City Police Department on December 26, 2015. *Id.* at 8. That arrest led to criminal charges against Plaintiff in New York State Supreme Court. Dkt. No. 8, Ex. A. Plaintiff brought this action on February 9, 2016 asserting claims for false arrest and the use of excessive force in relation to his December 26, 2015 arrest, and asserting claims for excessive force and deliberate indifference in relation to the January 25, 2016 incident at RNDC. Compl. at 8–12. On June 3, 2016, Judge Richard Sullivan, who was then presiding over this case, stayed the entire action pending resolution of Plaintiff's criminal case. Dkt. No. 9.

On March 11, 2019, Plaintiff moved to amend his original complaint (the "Complaint") to add additional claims relating to his criminal prosecution. Dkt. No. 79. The Court granted Plaintiff leave to do so. Dkt. No. 80. Plaintiff then filed his First Amended Complaint (the "FAC") on May 9, 2019, Dkt. No. 87, after which—and without leave of Court—he filed his Second Amended Complaint (the "SAC"), Dkt. No. 90.

On December 10, 2020, this Court partially lifted the stay, permitting Plaintiff to proceed on his claims related to the incident at RNDC. Dkt. No. 132. Plaintiff's criminal charges are still pending in New York State Supreme Court and, therefore, Plaintiff's claims arising from his December 26, 2015 arrest and subsequent prosecution remain stayed. *Id.*

The City Defendants filed a motion to dismiss on December 30, 2020, arguing that because Plaintiff failed to plead his claims related to the incident at RNDC against the City Defendants in the SAC, the City Defendants should be dismissed from this action. *See* Dkt. No. 135 ("Def.'s Br."), at 6–7. In the alternative, the City Defendants argue that Plaintiff has failed to plead sufficient facts to support his claims for excessive force and deliberate indifference under 18 U.S.C. § 1983 and that he has failed to plead the existence of any municipal policy, practice, or custom sufficient to establish liability under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978). *Id.* at 7–12. Plaintiff filed his opposition on February 9, 2021. Opp'n. The City Defendants filed a reply on March 22, 2021. Reply.

### c. Operative Complaint

Because Plaintiff is proceeding *pro se*, the Court will consider the Complaint, FAC, and SAC together as the operative pleading. This is a threshold issue that the Court must address at the outset because neither the FAC nor the SAC mention the January 25, 2016 incident at RNDC.

"It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). When the plaintiff is *pro se*, however, some courts "will consider facts from the [p]laintiff's [previous complaint] that have not been repeated in the [amended complaint]." *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-cv-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (citations omitted); *see also, e.g., Little v. City of New York*, No. 13-cv-3813, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("The plaintiff thus appears to believe that the Amended Complaint supplements, rather than replaces, the Original Complaint. Because the

plaintiff is proceeding *pro se*, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading."); *Camarano v. City of New York*, 624 F. Supp. 1144, 1147–48 (S.D.N.Y. 1986) ("Apparently viewing the amended complaint as supplemental, [plaintiff] did not repeat in his later filing the allegations set forth in the original complaint.... Since *pro se* civil rights complaints should be read with generosity, [plaintiff's] complaint must be given the benefit of incorporation." (internal quotation marks and citation omitted)).

**\*3** It is apparent that Plaintiff believed that the FAC and SAC would supplement, rather than replace, his original complaint. In fact, he titled his SAC an "addedum [sic] to amended complaint," evincing his belief that it would add to the previously filed pleadings. *See* SAC at 1. Therefore, the Court has elected to consider the factual support for Plaintiff's allegations contained in his Complaint, FAC and SAC.

### III. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to meet this pleading standard, a defendant may move to dismiss it for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

A court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor.[4] *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). But the Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (citation omitted). And a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678–79).

**\*4** Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' ...." (citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where ... the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). Even so, "dismissal of a *pro se* complaint is ... appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

The Court has reviewed Plaintiff's Complaint and construes it to raise both federal and state law claims arising from the January 25, 2016 incident at RNDC. The Court construes Plaintiff's Complaint to raise the following claims under 18 U.S.C. § 1983: (1) excessive force in violation of the Fourteenth Amendment; (2) deliberate indifference to medical needs in violation of the Fourteenth Amendment; and (3) municipal liability against the City of New York. Although Plaintiff brings this action under 18 U.S.C. § 1983, *see* Compl. at 1, the Court has an obligation to carefully review a *pro se* plaintiff's pleadings and construe them to raise the strongest arguments they suggest. *See Triestman*, 470 F.3d at 474. This includes an obligation to consider state law claims even where, as here, a Plaintiff has only referenced a federal cause of action. *See McLeod v. Jewish Guild*

*for the Blind*, 864 F.3d 154, 157–158 (2d Cir. 2017) (overruling Judge William Pauley's determination that a *pro se* plaintiff only asserted claims under federal law where she did not check the blanks corresponding to two state causes of action on a complaint form provided by the district court's *pro se* office). Therefore, the Court also construes Plaintiff's Complaint as raising the following state law claims arising from the January 25, 2016 incident: (1) battery; (2) assault; and (3) intentional infliction of emotional distress.

## IV. DISCUSSION

### a. Excessive Force

Plaintiff has adequately pleaded that C.O. Quayyum acted in an objectively unreasonable manner when he deliberately sprayed Mr. Dorsey. Because Plaintiff was injured as a result of C.O. Quayyum's conduct, Plaintiff's claim for excessive force is adequately pleaded. "Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citations omitted). "Analysis of a claim for use of excessive force begins with 'identification of the specific constitutional right allegedly infringed by the challenged application of force.' " *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (brackets omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "While the Eighth Amendment's protection does not apply 'until after conviction and sentence,' the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (citation omitted) (quoting *Graham*, 490 U.S at 392 n.6). As a pretrial detainee, Plaintiff's excessive force claim arises under the Fourteenth Amendment.

 **\*5**  To state a claim for excessive force under the Fourteenth Amendment, a pretrial detainee must allege that the defendant used force "purposefully, knowingly, or (perhaps) recklessly." *Edrei v. Maguire*, 892 F.3d 525, 534 (2d Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 395–96 (2015)). This is because "accidental or negligent acts are not subject to Fourteenth Amendment liability." *Id.* A pretrial detainee must also allege that "the force purposely or knowingly used against him was objectively unreasonable." *Id.* (internal quotation marks omitted). " '[A] pretrial detainee can prevail' by alleging 'that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.' " *Id.* at 535 (quoting *Kingsley*, 576 U.S. at 398). In *Kingsley*, the Supreme Court cautioned that this standard cannot be applied "mechanically" and that "objective reasonableness turns on the facts and circumstances of each particular case." 576 U.S. at 397 (internal quotation marks omitted). However, the following six non-exhaustive factors "bear on the reasonableness or unreasonableness of the force used: [(1)] the relationship between the need for the use of force and the amount of force used; [(2)] the extent of the plaintiff's injury; [(3)] any effort made by the officer to temper or to limit the amount of force; [(4)] the severity of the security problem at issue; [(5)] the threat reasonably perceived by the officer; [(6)] and whether the plaintiff was actively resisting." *Id.*

Plaintiff has plausibly alleged that C.O. Quayyum's use of force was deliberate. He describes the officer as "trigger happy" and alleges that C.O. Quayyum "recklessly" sprayed Mr. Dorsey after Mr. Dorsey used foul language. Compl. at 10. According to Plaintiff, the officer used the mace because "an inmate cusse[d]" at him. *Id.* Plaintiff has therefore alleged that C.O. Dorsey's discharge of the pepper spray was intentional. *See Kingsley*, 576 U.S. at 396 ("[I]f the use of force is deliberate—*i.e.*, purposeful or knowing—the pretrial detainee's claim may proceed.")

Plaintiff has also alleged that the use of force was objectively unreasonable. According to the Complaint, C.O. Quayyum sprayed Mr. Dorsey merely because he cursed at him, not because there was a security issue or other threat. Compl. at 15. Plaintiff has therefore alleged that Mr. Dorsey's conduct did not reasonably require the use of pepper spray. Plaintiff has also alleged that he, along with other inmates, suffered harm as a result of C.O. Quayyum's use of the pepper spray. *Id.* at 10. The injuries Plaintiff alleges, including difficulty breathing, skin irritation, and burning of the eyes, are sufficient to state a claim for excessive force. *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may

recover even if the injuries inflicted were not permanent or severe."). The other *Kingsley* factors do not apply here because Plaintiff alleges that there was no real or perceived security threat.

The City Defendants argue that Plaintiff has failed to plead an excessive force claim against C.O. Quayyum because Plaintiff was "not the target of the chemical agent." Def.'s Br. at 8. This is not, however, a categorical rule. *Compare McNair v. Ponte*, No. 17 Civ. 2976, 2020 WL 3402815, at *4 (S.D.N.Y. June 18, 2020) (noting that "the secondhand inhalation of pepper spray by persons who were not the intended targets of the discharge does not typically give rise to a constitutional claim." (quoting *Gutierrez v. City of New York*, No. 13 Civ. 3502, 2015 WL 5559498, at *8 (S.D.N.Y. Sept. 21, 2015))), *with Rodriguez v. City of New York*, No. 14-cv-8647, 2016 WL 11483837, at *5–6 (S.D.N.Y. Aug. 2, 2016) (finding that a plaintiff stated an excessive force claim by alleging that he was exposed to pepper spray following five corrections officers' "unprovoked assault" on another inmate), *report and recommendation adopted by* 2016 WL 5476003 (S.D.N.Y. Sept. 29, 2016) *and Hodge v. City of New York*, No. 19-cv-2474, 2019 WL 1455170, at *2 n.2 (S.D.N.Y. Apr. 1, 2019) (noting that "[a] prisoner may be able to state an excessive force claim if he is injured by officers who are using force against another inmate.").

The Second Circuit has yet to consider whether an unintended target of an officer's unreasonable use of force can plausibly state a claim for excessive force. The Ninth Circuit, however, has held that officers are liable for excessive force under the Eighth Amendment "so long as they have a specific intent to harm" regardless of their intended target. *Robins v. Meecham*, 60 F.3d 1436, 1440 (9th Cir. 1995). In the Ninth Circuit, when bringing an excessive force claim under the Eighth Amendment, a plaintiff need not allege "a specific intent to punish a specific individual." *Id.* at 1439. Instead, "[e]xcessive force directed at one prisoner can also establish a cause of action for harm that befalls other prisoners." *Clement v. Gomez*, 298 F.3d 898, 903 n.3 (9th Cir. 2002). Some courts in this district have adopted the Ninth Circuit's approach. *See e.g., Santos v. N.Y.C. Dep't of Corr.*, No. 08 Civ. 8790, 2010 WL 1142066, at *9 (S.D.N.Y. Feb. 25, 2010) (following the Ninth Circuit's analysis in *Robins* and finding that "when a correctional official intentionally and wantonly uses force without justification against one inmate, and thereby creates a substantial risk of harm and actual injury to other inmates, it cannot be the case that she is free of constitutional liability to the inmates she injures just because they were not her intended targets"), *report and recommendation adopted by* 2010 WL 1142065 (S.D.N.Y. Mar. 25, 2010); *Bilan v. Davis*, No. 11 Civ. 5509, 2013 WL 3940562, at *7 (S.D.N.Y. July 31, 2013) (following the reasoning from *Robins* and *Santos* in holding that plaintiff's "allegations could *potentially* state a claim for excessive force if he was injured while officers were trying to use excessive force against the non-party inmate"), *report and recommendation adopted by* 2013 WL 4455408 (S.D.N.Y. Aug. 20, 2013).

 **\*6** This Court need not decide whether, categorically, an unintended victim of pepper spray targeted at another has a cause of action for excessive force under the Fourteenth Amendment. *Edrei* suggests that each case should be evaluated on the basis of its unique facts—weighing against Defendants' argument that such a categorical rule exists. 892 F.3d at 536 ("the central inquiry has always been whether the government action was rationally related to a legitimate government objective."). The Court decides this case based on the fundamental principles outlined in *Edrei*. Where, as here, a plaintiff has alleged that the use of force was intentional—that is, that C.O. Quayyum deliberately used the pepper spray—and that the use of that force was objectively unreasonable, he has adequately pleaded a claim of excessive force under the Fourteenth Amendment. Therefore, the City Defendants' motion to dismiss Plaintiff's claim for excessive force against C.O. Quayyum is denied.

### b. Deliberate Indifference to Medical Needs

Because Plaintiff has not alleged a sufficiently serious injury, his deliberate indifference claim against C.O. Quayyum must be dismissed. A claim for deliberate indifference, when brought by a pretrial detainee, is "governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). This is because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Id.* (citation and internal quotation marks omitted).

A claim for deliberate indifference to serious medical needs has two elements. "The first requirement is objective: the alleged deprivation of adequate medical care must be 'sufficiently serious.' " *Spavone v. New York State Dep't of Correctional Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)). "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Id.* Following the Supreme Court's decision in *Kingsley*, 576 U.S. 389, the Second Circuit held that the second element of a deliberate indifference claim—often referred to as the "*mens rea* prong"—is to be assessed objectively. *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 719 (2d Cir. 2017) (citing *Darnell*, 849 F. 3d at 33, 35).

The Court first examines the objective prong. "Determining whether a deprivation is an objectively serious deprivation entails two inquiries." *Salahuddin*, 467 F.3d at 279. Courts must first determine "whether the prisoner was actually deprived of adequate medical care." *Id.* If so, the Court must then consider "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. "[I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.* at 280. "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.' " *Id.* (alteration in original) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Plaintiff pleads an actual deprivation of adequate medical care. He never received any medical attention following his exposure to the pepper spray. *See* Compl. at 15 ("[D]efendant failed to treat me").

Plaintiff does not, however, allege an injury that is sufficiently serious to state a claim for deliberate indifference to medical needs. Plaintiff's alleged injuries include "rest[r]icted breathing, caoughing [sic], sneezing, burning of eyes and throat, skin irritation [and] mental anguish." Compl. at 3. "[T]he temporary discomfort caused by pepper spray ... does not constitute a sufficiently serious [objective] injury." *McArdle v. Ponte*, No. 17-cv-2806, 2018 WL 5045337, at *4 (S.D.N.Y. Oct. 17, 2018) (internal quotation marks omitted) (quoting *Holmes v. City of New York*, No. 17 cv 3874, 2018 WL 4211311, at *7 (S.D.N.Y. Sept. 4, 2018)); *see also Johnson v. Schiff*, No. 17-cv-8000, 2019 WL 4688542, at *14 (S.D.N.Y. Sept. 26, 2019) (finding plaintiff failed to plead deliberate indifference because he did not claim "that he suffered permanent effects or serious injury from the pepper spray"); *Wright v. Trapasso*, No. 15-cv-4428, 2018 WL 4688940, at *11 (E.D.N.Y. Sept. 28, 2018) (stating that "[p]laintiff's 'incredible discomfort' as a result of the pepper spray does not rise to the level of seriousness required for a constitutional violation"). Therefore, Plaintiff has not alleged a sufficiently serious injury. *See McArdle*, 2018 WL 5045337, at *1, 4 (plaintiff who alleged that pepper spray exposure caused him "temporary vision loss, respiratory difficulties, and skin irritation" did not plead a sufficiently serious injury); *Holmes*, 2018 WL 4211311, at *7 (plaintiff who suffered a "20–60 minute coughing fit and burning sensations on his skin and eyes" after exposure did not plead a sufficiently serious injury); *Williams v. City of New York Dep't of Corr.*, No. 19 Civ. 9528, 2020 WL 3893929, at *5 (S.D.N.Y. July 10, 2020) (holding that plaintiff who alleged trouble breathing and chest pains at the time of exposure and claimed that denial of care worsened his asthma did not identify "a serious condition that ... caused him chronic and substantial pain or that ... significantly affected his daily activities").

**\*7** Plaintiff has not adequately pleaded that his injury was sufficiently serious under the objective prong and, therefore, the Court need not consider whether the denial of care was subjectively reckless. Because Plaintiff does not allege a sufficiently serious injury, his claim against C.O. Quayyum for deliberate indifference to his medical needs is dismissed.


### c. Municipal Liability

Plaintiff has not identified a municipal policy or custom that is responsible for the alleged constitutional violations and, therefore, has not stated a federal claim against the City of New York. A municipality is not vicariously liable for its employees' actions under 42 U.S.C. § 1983. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691). Municipalities are, however, liable for "their *own* illegal acts." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). Plaintiffs seeking to hold a municipality liable under § 1983 must plead "(1) an official policy or

custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).

A plaintiff may satisfy the "policy or custom" element in one of four ways: by alleging the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur*, 475 U.S. at 483-84; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690–91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).

The facts pleaded by Plaintiff do not support liability on the basis of any of the first three theories. The only official policy mentioned by Plaintiff is the Chemical Agent Guidelines. And that policy explicitly prohibited this conduct. *See* Chemical Agents Guidelines at 27. Second, Plaintiff never implicates any final municipal policymakers. A final municipal policymaker is an official "sufficiently high up in the municipal hierarchy that he [i]s responsible under state law for making policy in that area of the municipality's business." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (internal citations and quotation marks omitted). Plaintiff does not allege that any such official was involved in the incident. C.O. Quayyum is the only D.O.C. officer mentioned, and there is no allegation that C.O. Quayyum was responsible for establishing D.O.C. policy. Finally, Plaintiff only describes one incident involving the use of pepper spray, not a "persistent and widespread" practice. *See, e.g., Jones v. Town of E. Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (holding that two or three alleged constitutional violations did not demonstrate "a policy, custom, or usage" for purposes of *Monell* liability).

Thus, Plaintiff's only potential theory of liability under *Monell is* a failure to train. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. In order for municipal liability to attach on a failure to train theory, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing *City of Canton*, 489 U.S. at 388). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal quotation marks and citation omitted).

**\*8**  Plaintiff does not allege that improper training or supervision caused his constitutional deprivation, and Plaintiff details only one instance in which he was exposed to pepper spray. On its own, this incident does not provide a sufficient factual basis to plead improper training or supervision. *See Cox v. City of New Rochelle*, No. 17-cv-8193, 2019 WL 3778735, at \*8 (S.D.N.Y. Aug. 12, 2019) (holding that plaintiff failed to state a *Monell* claim regarding improper training when the only facts alleged were drawn "from the incident giving rise to this case"); *Holmes*, 2018 WL 4211311, at \*3 (stating that "a pattern of similar incidents" was necessary for alleging *Monell* liability regarding improper training and pepper spray exposure). Because Plaintiff has not alleged that an official municipal policy or custom deprived him of his constitutional rights, he has failed to state a claim for municipal liability under *Monell* and his federal claims against the City of New York must be dismissed. [5]

### d. State Law Claims

The City Defendants did not address any of Plaintiff's possible state law causes of action in their motion. Courts, however, have an obligation to liberally construe a *pro se* plaintiff's pleadings and identify all possible claims, even those not explicitly referenced. *See McLeod*, 864 F.3d at 157. Despite the City Defendants' failure to raise or brief this issue, the Court has construed Plaintiff's Complaint to bring intentional infliction of emotional distress (IIED) and assault and battery claims under New York State law.

### 1. Assault and Battery

Plaintiff has sufficiently pleaded that C.O. Quayyum used excessive force against him, and, therefore, Plaintiff has sufficiently alleged assault and battery claims against both C.O. Quayyum and the City of New York. "Under New York law, civil assault 'is an intentional placing of another person in fear of imminent harmful or offensive contact.' " *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021) (quoting *Charkhy v. Altman*, 678 N.Y.S.2d 40, 41 (1st Dep't 1998)). "Civil battery is an intentional wrongful physical contact with another person without consent." *Id.* (internal quotation marks omitted) (quoting *Charkhy*, 678 N.Y.S.2d at 41). "The elements of New York assault and battery and Section 1983 excessive force claims are substantially identical." *Id.* (internal quotation marks omitted) (quoting *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991)). "To succeed on assault or battery claims in the law enforcement context, a plaintiff must also demonstrate that the defendant officer's conduct 'was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties.' " *Id.* (quoting *Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005)). "[P]er the text of [New York Penal Law § 35.30], the use of physical force 'when and to the extent the officer reasonably believes such to be necessary,' is the 'functional equivalent' of an objective reasonableness standard." *Id.* (brackets omitted) (quoting *Heath v. Henning*, 854 F.2d 6, 9 (2d Cir. 1988)). Thus, having already found that Plaintiff has adequately pleaded an excessive force claim against C.O. Quayyum under § 1983, the Court also finds that Plaintiff has sufficiently alleged assault and battery claims against C.O. Quayyum.

**\*9** Plaintiff has also adequately alleged assault and battery against the City of New York because the City can be held liable under a theory of *respondeat superior*. One crucial difference between assault and battery under New York law and an excessive force claim under federal law is that "under state law, the City may be held vicariously liable for the torts of its employees ... regardless of whether those actions resulted from a municipal policy or practice." *Johnson v. N.Y. Dep't of Corr.*, No. 15-CV-640, 2015 WL 4884880, at *3 (E.D.N.Y. Aug. 13, 2015); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 399 (S.D.N.Y. 2013) (stating that *respondeat superior* applies to state law claims for assault and battery against a city). Therefore, Plaintiff's claims for assault and battery against C.O. Quayyum and the City of New York may proceed.

### 2. Intentional Infliction of Emotional Distress

Because Plaintiff has alternative claims available to him and because he has not sufficiently alleged at least two of the claim's elements, his IIED claims against C.O. Quayyum and the City of New York must be dismissed. "Under New York law [ ] a claim for IIED requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.' " *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (quoting *Howell v. N.Y. Post Co.*, 596 N.Y.S.2d 350, 353 (1993)). "As New York's highest court has observed, the standard for stating a valid claim of [IIED] is 'rigorous, and difficult to satisfy.' " *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell*, 596 N.Y.S.2d at 353). "To meet this standard, the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized' society.' " *Specht v. City of New York*, 15 F.4th 594, 606 (2d Cir. 2021) (quoting *Murphy v. Am. Home Prods. Corp.*, 461 N.Y.S.2d 232, 236 (1983)).

Plaintiff has not pleaded the second or fourth element of an IIED claim. Plaintiff has not alleged that C.O. Quayyum intended to cause or disregarded the probability of causing Plaintiff severe emotional distress when he exposed Plaintiff to pepper spray. Nor has Plaintiff pleaded that he actually experienced severe emotional distress. Plaintiff's only reference to emotional distress is the broad assertion that he suffered "mental anguish." Compl. at 3. This lone and conclusory allegation is insufficient to plead severe emotional distress. *See Delaney v. Perez*, No. 19-cv-6084, 2021 WL 3038642, at *7 (S.D.N.Y. July 16, 2021) ("Any allegations of suffering from severe emotional distress must be supported with objective evidence and not speculative claims."); *Winter v. Pinkins*, No. 14-cv-8817, 2016 WL 1023319, at *7 (S.D.N.Y. Mar. 8, 2016) ("conclusory allegations do not suffice to

withstand a Rule 12(b)(6) motion, as Plaintiff offers no facts indicating what emotional distress he suffered, how long it lasted, how severe it was, and whether he sought medical treatment for the distress.").

Furthermore, IIED is "a highly disfavored tort under New York law," *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (brackets and internal quotation marks omitted), and "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not," *Rich*, 939 F.3d at 122 (quoting *Salmon*, 802 F.3d at 256). "[W]here the challenged conduct 'falls well within the ambit of other traditional tort liability,' " the New York Appellate Division courts have all held that IIED claims cannot be brought. *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (first quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557–58 (1978); then citing *Doin v. Dame*, 82 A.D.3d 1338, 1340 (3d Dep't 2011); *Leonard v. Reinhardt*, 20 A.D.3d 510, 510 (2d Dep't 2005); *Di Orio v. Utica City Sch. Dist. Bd. of Educ.*, 305 A.D.2d 1114, 1115 (4th Dep't 2003); and *Hirschfeld v. Daily News, L.P.*, 269 A.D.2d 248, 249 (1st Dep't 2000)). As described above, Plaintiff has other causes of action available to him to challenge C.O. Quayyum's use of pepper spray. For the above reasons, Plaintiff's IIED claim against C.O. Quayyum is therefore dismissed.

### V. LEAVE TO AMEND

**\*10** The Court grants Plaintiff leave to replead his dismissed claims against C.O. Quayyum and the City of New York. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). While leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," those circumstances do not apply in this case. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted). Any amended complaint must be filed no later than fourteen days from the date of this order. Because Plaintiff's third amended complaint would completely replace his existing complaints, any facts or claims that Plaintiff wishes to maintain must be included in the third amended complaint, including all claims relating to Plaintiff's arrest and ongoing prosecution.

### VI. CONCLUSION

For the reasons stated here, the City Defendants' motion to dismiss is granted in part. Plaintiff's claim of deliberate indifference against C.O. Quayyum, his municipal liability claim against the City of New York, and his claims for IIED against C.O. Quayyum and the City of New York are dismissed without prejudice. The City Defendants' motion to dismiss Plaintiff's excessive force claim against C.O. Quayyum and his claims for assault and battery against both C.O. Quayyum and the City of New York is denied.

The Court requests that counsel for Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mail a copy of this order by first class mail to Plaintiff and to terminate the motion currently pending at Dkt. No. 134.

SO ORDERED.

### All Citations

Slip Copy, 2021 WL 6065743

# Footnotes

1    Unless otherwise noted, the facts are taken from the Complaint, and are accepted as true for purposes of this Rule 12(b)
(6) motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a
court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009).

2    The Court refers to the relevant ECF page number when citing to the Complaint.

3    In his Opposition brief and for the first time, Plaintiff alleges that a John Doe "Captain assigned to the area" also denied
him "medical treatment" and " 'acted in concert' with [C.O. Quayyum] in an apparent coverup" of the spraying. Dkt.
No. 150 ("Opp'n") at 4. As noted by the City Defendants in their Reply in Support of the Motion to Dismiss, Dkt. No.
151 ("Reply"), the John Doe Captain is not a named defendant in this case. Reply at 5. The Court therefore does not
consider any allegations against him.

4    The City Defendants contest Plaintiff's description of events. They ask me to adopt the facts from the D.O.C.'s
investigative report filed in *Brown v. City of New York*, No. 16-CV-06077 (E.D.N.Y. Mar. 18, 2020). *See* Def.'s Br. at
8; Dkt. No. 153-1 ("Rolon Decl."), Ex. A. The City Defendants allege that Mr. Taylor's complaint concerns the same
incident analyzed in *Brown*. Def.'s Br. at 8. According to *Brown*, C.O. Quayyum was breaking up a fight when he used
pepper spray on a group of inmates. Rolon Decl. at 10. The Court cannot adopt the facts from *Brown* when deciding
whether to dismiss Mr. Taylor's complaint. On a motion to dismiss, the Court must take as true the facts alleged by the
plaintiff and draw all inferences in his favor. The Court may only "consider documents that are attached to the complaint,
incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." *United States v. Strock*,
982 F.3d 51, 63 (2d Cir. 2020) (internal quotation marks omitted). Neither *Brown* nor the D.O.C.'s investigative report are
attached to the complaint, incorporated in it by reference, or integral to the Complaint; the Complaint makes no reference
to any investigative report or to any other lawsuits arising from the same incident. Under Federal Rule of Evidence 201,
the Court can take judicial notice of a fact only when it "is not subject to reasonable dispute because it: (1) is generally
known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose
accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The Court can therefore take judicial notice of Judge
Amon's decision in *Brown* since the fact of that decision is not subject to reasonable dispute. The Court cannot, however,
adopt the facts relied upon in *Brown*. *See Strock*, 982 F.3d at 63 (noting that the court was permitted to take judicial
notice of a public report "in order to determine *what* statements [it] contained ... *not for the truth of the matters asserted*
therein." (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (alterations and emphasis in original)).

5    Plaintiff alleges in his Opposition that "a Captain assigned to the area ... 'acted in concert' with Quayyum in an
apparent cover up" after Plaintiff was exposed to pepper spray. *See* Opp'n at 4. These allegations were not raised in the
Complaint, the FAC, or the SAC. Even if the Court were to exercise its discretion to consider Plaintiff's new factual
allegations regarding the John Doe Captain, he would still fail to allege a policy or custom that resulted in a constitutional
deprivation. First, the newly raised factual allegations against the John Doe Captain do not change Plaintiff's description
of his injuries. Plaintiff still fails to assert a sufficiently serious injury in order to plead a deliberate indifference to medical
needs claim against anyone. The fact that a John Doe Captain saw that Plaintiff and others suffered from these short-
term pepper spray effects changes nothing. "A municipality is not liable under § 1983 when no constitutional violation
has occurred." *Williams*, 2020 WL 3893929, at *6. Second, Plaintiff does not allege that the John Doe Captain himself
used pepper spray or otherwise deployed force against Plaintiff, nor that the John Doe Captain was even present when
C.O. Quayyum deployed the chemical agent. Third, Plaintiff does not allege that the John Doe Captain had decision-
making authority or was a policy-maker and, therefore, his inaction would not establish a policy or custom sufficient
to create *Monell* liability.

2020 WL 3893929

2020 WL 3893929

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Alexander WILLIAMS, Jr., Plaintiff,

v.

The CITY OF NEW YORK DEPARTMENT OF CORRECTION, The

City of New York, and NYC Health & Hospitals Corporation, Defendants.

19 Civ. 9528 (ER)

|

Signed 07/10/2020

**Attorneys and Law Firms**

Sherry Nicole Glover, Thomas B. Roberts, The City of New York Law Department, New York, NY, for Defendants.

**OPINION & ORDER**

Ramos, D.J.:

**\*1** Alexander Williams, Jr., proceeding *pro se*, commenced this action on September 3, 2019 in New York County Supreme Court, bringing claims related to two incidents that took place while he was a detainee at the Manhattan Detention Complex in New York City (the "MDC"). Docs. 1, 1-3. The City of New York Department of Correction (the "DOC"), the only defendant named at the time, removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and (c), on the premise that Williams's complaint alleged violations of his 14th Amendment constitutional rights pursuant to 42 U.S.C. § 1983. Doc. 1 ¶ 7. After removal, Williams amended his complaint to add the City of New York (the "City") and the NYC Health & Hospitals Corporation (the "HHC"). Doc. 7-1 ¶ 3. Before the Court is Defendants' motion to dismiss the action for failure to state a claim, Doc. 8, and Plaintiff's unopposed motion for summary judgment, Doc. 18. For the following reasons, Defendants' motion is GRANTED, and Plaintiff's motion is DENIED.

**I. BACKGROUND**

**A. Factual Background**

Williams brings the instant case based on incidents that occurred on June 25, 2019 and July 17, 2019, when he was detained at the MDC. [1] Doc. 1-3. On these dates, he was housed in Unit 9 North, a cellblock with no windows or circulation system. *Id.* ¶¶ 1, 14, 15. At approximately 2:00 p.m. on June 25, 2019, Unit 9 North was exposed to a large amount MK-9 and MK-4 oleoresin capsicum (OC) spray—commonly referred to as pepper spray—in connection with the forcible removal of an inmate. *Id.* ¶ 1. The officers working at what Williams calls the "bubble station" were forced to don gas masks in order to continue their duties because of the amount of pepper spray. *Id.* ¶ 3. At approximately 2:15 p.m., Williams informed a correction officer at the 9 North post that he was suffering from chest pains, having trouble breathing, and that he had a history of being asthmatic. *Id.* ¶¶ 2, 5. The area supervisor on shift contacted the medical department at approximately 2:25 p.m., but no one came to see Williams. Doc. 7-1 ¶ 8. After a shift change, the new area supervisor contacted the clinic at approximately 5:30 p.m. and again at approximately 8:00 p.m., requesting medical attention for Williams. *Id.* ¶¶ 9-10. When medical attention was not dispatched, Williams was eventually escorted to the clinic at 8:32 p.m. *Id.* ¶ 11. Williams states that since this incident, he has had to use his asthma pump more times than he had to previously. Doc. 1-3 ¶ 12.

The second incident occurred at approximately 6:15 p.m. on July 17, 2019, also in Unit 9 North. At that time, Correction Officer Ma used half a can of pepper spray during an altercation with an inmate. *Id.* ¶¶ 13. This allegedly occurred about four feet from Williams. *Id.* ¶ 14. As a result, Williams began to have trouble breathing, but was not permitted to return to his cell to retrieve his asthma pump. *Id.* ¶ 16. Williams claims that he was choking and banging on the cell door for medical assistance for at least 45 minutes. *Id.* ¶ 17. Williams states that he "was forced to use the toilet bowl and its water as a conduit to fresh air and pumping [sic] air into his mouth in order to prevent further medical matters."[2] *Id.* ¶ 18. Approximately an hour later, a correction officer handcuffed and escorted him to his cell to use his pump, and Williams informed this officer that he needed medical attention because of tightness in his chest and trouble breathing. *Id.* ¶¶ 19-20. Although medical attention was called for another inmate having trouble breathing, and despite Williams informing several officers that he also required medical attention even after using his pump, Williams was never seen by medical staff. *Id.* ¶¶ 21-22.

### B. Procedural History

**\*2** Williams commenced this action on September 3, 2019 in New York County Supreme Court of the State of New York. Doc. 1 ¶ 4. On October 15, 2019, the DOC removed the action to this Court. Doc. 1. The DOC filed a motion to dismiss the complaint on October 31, 2019. Docs. 4, 5. On November 1, 2019, Williams amended his complaint, adding the City and the HHC as defendants. Doc. 7-1. Defendants moved to dismiss the amended complaint on November 14, 2019. Doc. 8. Williams filed his opposition to the motion to dismiss on November 27, 2019. Doc. 11. On December 19, 2019, Defendants submitted a reply memorandum. Doc. 14. Williams subsequently submitted a motion for summary judgment on March 17, 2020. Doc. 18. That motion is unopposed.

## II. LEGAL STANDARD

### A. 12(b)(6) Motion to Dismiss

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Courts must construe a *pro se* complaint liberally and interpret its claims as "rais[ing] the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d. Cir. 2006) (citing *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). When a plaintiff's claims involve civil rights violations, the Court applies this standard "with particular force." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678.

### B. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might "affect the outcome of the suit under the

2020 WL 3893929

governing law." *Id.* (internal quotation marks and citation omitted). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where, like here, "the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex*, 477 U.S. at 322–23). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322–23).

**\*3** Even if a motion for summary judgment is unopposed, the Court is required to "review the motion ... and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)). If the burden of proof at trial would fall on the movant, that party's "own submissions in support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

*Pro se* litigants' submissions "are held 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. New York City Dep't of Educ.*, No. 09 Civ. 6621, 2010 WL 2776835, at \*5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,' " *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest,' " *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson*, 709 F. Supp. 2d at 224 (citing *McEachin*, 357 F.3d at 200).

## III. DISCUSSION

Defendants move to dismiss on the grounds that (a) Williams has failed to allege facts sufficient to establish that his Fourteenth Amendment rights were violated, and (b) his failure to allege an underlying constitutional violation is fatal to his *Monell* claim. Doc. 9 at 1.[3] The Court agrees with both of these arguments.

### A. Fourteenth Amendment Claims

Williams's complaint can best be interpreted as alleging a Fourteenth Amendment violation pursuant to Section 1983.[4] "Section 1983 provides a private cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Boyland v. Wing*, 487 F. Supp. 2d 161, 167 (E.D.N.Y 2007) (quoting 42 U.S.C. § 1983). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To succeed under Section 1983, Williams must allege that (1) the challenged action deprived him of a right secured by the Constitution or federal law, and (2) defendants are state actors or acted under color of state law at the time of the challenged action. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *see also Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 136–37 (2d Cir. 1999).

**\*4** In this case, Williams alleges that Defendants were deliberately indifferent to his medical care in violation of his Fourteenth Amendment rights when they delayed and denied him treatment after exposing him to pepper spray. Doc. 1-3 ¶¶ 24-26. To state a claim for deliberate indifference to medical care, Williams must show that (1) he suffered an objectively sufficient

"serious medical condition," and (2) the prison official acted with "deliberate indifference to that serious medical need." *Chavis v. Kienert*, No. 03 Civ. 0039 (FJS) (RFT), 2005 WL 2452150, at *22 (N.D.N.Y. Sept. 30, 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994)). First, "to establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.' " *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (quoting *Walker*, 717 F.3d at 125). Second, to show deliberate indifference under the Fourteenth Amendment, the official need only "recklessly fail[ ] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35 (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). While not clearly distinguished by Defendants' Motion to Dismiss, Doc. 9 at 5, "[u]nder the Fourteenth Amendment, deliberate indifference is measured from an objective perspective." *Smith v. Outlaw*, No. 15 Civ. 9961 (RA), 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30, 2017) (citing *Darnell*, 849 F.3d at 35). Williams's complaint meets neither of these two prongs.

### 1. Seriousness of Williams's Condition

Under the so-called objective prong, a medical need is "sufficiently serious" if it presents a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Lloyd v. Lee*, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). Courts consider factors such as "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (alteration in original) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). In cases of delayed medical treatment, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant" and the Court should "focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone." *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). The seriousness of condition standard "contemplates a 'condition of urgency' that may result in 'degeneration' or 'extreme pain.' " *Chance*, 143 F.3d at 702 (quoting *Hathaway*, 37 F.3d at 66).

In this case, Williams alleges that the shortness of breath and chest pains he experienced as a result of exposure to pepper spray satisfies this condition. Doc. 1-3 ¶¶ 2, 16-18. Defendants argue that the facts "suggest only the existence of an asthmatic condition" and therefore do not rise to the level of being a sufficiently serious medical condition. Doc. 9 at 6. At no point does Williams allege that he suffered an asthma attack during either incident. "Unquestionably, infliction of pepper spray on an arrestee has a variety of incapacitating and painful effects." *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010). However, courts in this circuit have routinely found that while the temporary effects of pepper spray are "undoubtedly uncomfortable and painful," they do not establish a sufficiently serious injury. *Holmes v. New York City*, No. 17 Civ. 3874 (WHP), 2018 WL 4211311, at *7 (S.D.N.Y. Sept. 4, 2018); *see also Strassner v. O'Flynn*, No. 04 Civ. 6021 (CJS), 2006 WL 839411, at *8 (W.D.N.Y. Mar. 27, 2006) (collecting cases). Courts in this circuit have also determined that while merely "[b]eing an asthmatic (a person susceptible to asthma attacks) is not a condition ... that is severe or 'sufficiently serious,' " they distinguish the mere "existence of the condition ... from the situation in which an inmate is suffering an actual attack." *Patterson v. Lilley*, No. 02 Civ. 6056 (NRB), 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003) (internal citation omitted); *see also Vazquez v. Spear*, No. 12 Civ. 6883 (VB), 2014 WL 3887880, at *6 (S.D.N.Y. Aug. 5, 2014) (an "asthmatic condition alone does not impose a substantial risk of serious harm").

**\*5** For the June 25, 2019 incident, the basis for Williams's claim is that his medical treatment was delayed, not that it was inadequate. The Second Circuit has ruled the serious medical condition standard satisfied in cases where, for example, "officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years." *DeMeo v. Koenigsmann*, No. 11 Civ. 7099 (HBP), 2015 WL 1283660, at *11 (S.D.N.Y. Mar. 20, 2015) (quoting *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233, 1999 WL 753142, at *2 (2d. Cir. 1999)). Although the Court appreciates that Williams was in pain and experienced respiratory distress, he has failed to allege that the delay in treatment exacerbated his asthmatic condition to the point of degeneration or extreme pain.

For the July 17, 2019 incident, Williams appears to claim that he was denied medical care altogether. After exposure to pepper spray, he alleges having issues breathing and that he was choking and banging on the cell door for at least 45 minutes, ultimately having to use the toilet bowl to clear his airways. Doc. 1-3 ¶¶ 16-18. Even after being returned to his cell to use his pump, Williams told correction officers that he was still having chest pains and breathing issues but never received medical attention. *Id.* ¶¶ 20-22. Defendants argue that Williams's request for medical assistance was acted upon by being given access to his pump. Doc. 9 at 7. Cases in which failure to receive treatment have been determined to satisfy this condition include, for example, *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (failure to treat a facial keloid leading to chronic pain of a magnitude "between 'annoying' and 'extreme' "), *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (failure to treat cavity creating a "a degenerative condition that tends to cause acute infections, debilitating pain and tooth loss if left untreated"), *Chance*, 143 F.3d at 703 (failure to treat dental problems resulting in extreme pain, teeth deterioration, and inability to eat properly), *Koehl v. Dalsheim*, 85 F.3d 86, 87 (2d Cir. 1996) (confiscation of prescribed eyeglasses and subsequent denial of medical treatment leading to loss of vision in one eye), and *Hathaway*, 37 F.3d at 64–65, 67 (failure to remove broken hip pins from prisoner's hip causing persistent pain for over three years), *cert. denied*, 513 U.S. 1154 (1995). Although Williams alleges that he has had to use his pump more frequently as a result of the pepper spray incidents, Doc. 1-3 ¶ 12, he has not alleged that this is a serious condition that has caused him chronic and substantial pain or that has significantly affected his daily activities. As such, Williams's allegations do not rise to the level of seriousness required to meet this standard in the Second Circuit.

Therefore, Williams has failed to meet the first prong of the deliberate indifference standard for both incidents.

### 2. Deliberate Indifference Prong

Neither does Williams meet the second prong of the deliberate indifference standard. When a pretrial detainee alleges a violation of his Fourteenth Amendment rights, he "can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Charles v. Orange Cty.*, 925 F.3d 73, 87 (2d Cir. 2019). "Whether the state knew or should have known of the substantial risk of harm to the detainee is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* (citing *Farmer*, 511 U.S. at 842). The Second Circuit has held that, "any § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence." *Darnell*, 849 F.3d at 36.

**\*6** In both incidents, Williams has failed to allege facts that support a claim of deliberate indifference. For the June 25, 2019 incident, while there was a delay of a few hours in his receiving medical treatment, the delay does not support the inference that the correction officers were deliberately indifferent to his medical needs. *See Lloyd v. City of New York*, 246 F. Supp. 3d 704, 720 (S.D.N.Y. 2017) (holding a delay of one day of providing antibiotics for a chest wound "amounts to negligent conduct at most" and does not rise to the level of a constitutional claim), *Grimmett v. Corizon Med. Assocs. of New York*, No. 15 Civ. 7351 (JPO) (SN), 2017 WL 2274485, at \*5 (S.D.N.Y. May 24, 2017) (finding a doctor not negligent for a two-day delay in treatment). In fact, the correction officers called for medical attention for Williams multiple times. Docs. 1-3 ¶¶ 4-7, 7-1 ¶¶ 7-11.

For the July 17, 2019 incident, Williams has also failed to allege that correction officers "acted intentionally" to deprive him of adequate care or that they "recklessly failed to act with reasonable care." *Darnell*, 849 F.3d at 35. He was permitted to use his pump, albeit at least an hour after being exposed to pepper spray. Doc. 1-3 ¶¶ 13-23. Courts in this district have found that a prisoner's disagreement with the treatment he or she received "is not, without more, sufficient to state a constitutional claim." *Rivera v. Doe*, No. 16 Civ. 8809 (PAE) (BCM), 2018 WL 1449538, at \*11 (S.D.N.Y. Feb. 26, 2018); *see also Johnson v. Schiff*, No. 17 Civ. 8000 (KMK), 2019 WL 4688542, at \*12 (S.D.N.Y. Sept. 26, 2019) ("[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to a[ ] [deliberate indifference] violation.") (quoting *Chance*, 143 F.3d at 703). While Williams may have preferred to see a medical professional, he is not alleged sufficient facts to support a claim of deliberate indifference against the correction officers.

### B. *Monell* Liability

Williams has not alleged sufficient facts to adequately plead a violation of his constitutional rights, and so there is no *Monell* liability. A municipality is not liable under § 1983 where no constitutional violation has occurred. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

However, even if a constitutional violation had been found to have occurred, Williams's complaint still fails to establish a valid claim against Defendants. Although a municipality cannot be held liable under § 1983 solely on a theory of *respondeat superior*, a § 1983 claim may be brought against a municipality if the alleged unconstitutional action was the result of an official policy, practice or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–92 (1978). The Second Circuit has established a two-prong test for Section 1983 claims brought against a municipality. First, the plaintiff must prove "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official]." *Johnson v. City of New York*, No. 06 Civ. 9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). Second, the plaintiff must "establish a causal connection ... between the policy or custom and the alleged deprivation of his constitutional rights." *Id.*

In this case, Williams alleges the existence of an unconstitutional municipal practice of not providing inmates within MDC the opportunity to receive medical attention after correctional officers deploy pepper spray. Doc. 11 ¶ 20. However, proof of "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)) (internal quotation marks omitted). Without offering any factual support for his conclusory allegations, this Court cannot "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 557). [5] Williams also alleges that defendants failed to adequately train and supervise their subordinates regarding DOC's chemical agent policy. Doc. 1-3 ¶ 29-30. However, Williams has not identified any specific training or supervisory deficiency which he contends resulted in the deprivation of his constitutional rights, nor has he alleged any facts to show that the City acted with deliberate indifference to any constitutional violations.

**\*7** Therefore, even if a constitutional violation had been found, Williams's complaint would fail to establish a *Monell* claim.

## C. State Law Claims

Williams also brought claims under New York State law. Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise jurisdiction over any non-federal claims over which it could have supplemental jurisdiction if the Court has dismissed all of the claims over which it has original jurisdiction. Subject matter jurisdiction in the instant action is based on federal question, 28 U.S.C. § 1331, and the jurisdictional counterpart to § 1983, 28 U.S.C. § 1343.

Having disposed of all of Plaintiff's federal claims, it would be inappropriate to adjudicate the remaining state law claims and the Court declines to retain jurisdiction over the remaining state law claims. *See United Mine Workers v. Gibbs of Am.*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial ... the state claims should be dismissed as well."). "Where the state claims originally reached the federal forum by removal from a state court, the district court has the discretion to dismiss the claims without prejudice or remand them to the state court." *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)); *see also Carnegie-Mellon*, 484 U.S. 343 at 357 ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate. The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine."), *Bhattacharya v. Suny Rockland Cmty. Coll.*, 719 F. App'x. 26, 28 (2d Cir 2017) ("[A] district court ... has discretion either to dismiss the [state law] claims without prejudice or to remand the claims."). Courts in this district have exercised this option, remanding state law claims upon the dismissal of all federal claims, particularly when the cases originated in state court. *See Smith v. Centerlight Healthcare, Inc.*, No. 17 Civ. 2135 (DLC), 2018 WL 3104086 (S.D.N.Y. June 21, 2018) (remanding *pro se* plaintiff's state law claims after dismissing federal claims), *Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F. Supp. 3d 429 (S.D.N.Y. 2016) (same), *Jackson v. Ramirez*, No. 15 Civ. 617 (GHW), 2016 WL 796854

2020 WL 3893929

(S.D.N.Y. Feb. 22, 2016) (same), *Grand Manor Health Related Facility, Inc. v. Hamilton Equities Inc.*, 941 F. Supp. 2d 406 (S.D.N.Y. 2013) (remanding state law claims after dismissing federal claims), *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293 (S.D.N.Y. 2004) (same). As this case was removed from the Supreme Court of the State of New York, New York County, this Court remands Williams's state law claims to that Court.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss Williams's § 1983 claims. It declines to retain supplemental jurisdiction over the remaining state law claims and therefore REMANDS those claims to state court. As a result, Williams's motion for summary judgment is DISMISSED as moot. The Clerk of Court is respectfully directed to terminate these motions, Docs. 8, 18, and to close this case.

**\*8** SO ORDERED.

## All Citations

Slip Copy, 2020 WL 3893929

## Footnotes

1    Although Williams does not state whether he was a pretrial detainee or whether he was sentenced at the time of the incidents, he references the standard for pretrial detainees throughout his later-filed motion for summary judgment. *See* Doc. 19 at 5–6. Defendants also reference the same standard in their motion to dismiss. *See* Doc. 9 at 4-5. As such, the Court will assume that Williams was a pretrial detainee during the relevant period.

2    Williams does not detail how precisely he used the water to obtain relief.

3    Defendants also argue that the DOC must be dismissed because it is a non-suable entity. Doc. 9 at 7-8. Williams concedes that the DOC should be dismissed. Doc. 11 ¶ 19. The Court will therefore examine these arguments as they pertain to the remaining Defendants.

4    Jailed individuals are protected against "deliberate indifference to conditions that pose a substantial risk of serious harm to his physical well-being" by either the Eighth Amendment or the Fourteenth Amendment. *Ortiz v. Dep't of Corr. of City of New York*, No. 08 Civ. 2195 (RJS) (HBP), 2011 WL 2638137, at \*4 (S.D.N.Y. Apr. 29, 2011), *report and recommendation adopted sub nom. Ortiz v. Hernandez*, No. 08 Civ. 2195 (RJS), 2011 WL 2638140 (S.D.N.Y. July 5, 2011). "If the individual is a sentenced prisoner, the source of protection is the Eighth Amendment. If the individual is a pretrial detainee, the source of protection is the Due Process Clause of the Fourteenth Amendment." *Id.* (citations omitted). Because Williams was a pretrial detainee at the time of the incidents, the Fourteenth Amendment applies here.

5    Williams does allege that the DOC has a Chemical Agent Directive No. 4510 requiring that "any inmate that is and/or has been in the affected area of deployment of [pepper spray] must be removed to see medical within a reasonable amount of time." Doc. 11 ¶ 16. However, this claim is not that the DOC policy was improper, but that DOC officers failed to follow their own policy. An alleged failure to follow a policy "is the antithesis of a link between policy and action," and is insufficient to state a claim under *Monell. Walker v. Shaw*, No. 08 Civ. 10043 (CM), 2010 WL 2541711, at \*7 (S.D.N.Y. June 23, 2010).

---

**End of Document**                                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Wright v. Trapasso, Not Reported in Fed. Supp. (2018)

2018 WL 4688940

2018 WL 4688940

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

George WRIGHT, Plaintiff,

v.

Police Officer James TRAPASSO and Police Officer Kenneth Greene, Defendants.

15-CV-4428 (MKB)

|

Signed 09/28/2018

**Attorneys and Law Firms**

George Wright, Staten Island, NY, pro se.

Erin T. Ryan, Peter John Fogarty, New York City Law Department, New York, NY, for Defendants.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge

**\*1** Plaintiff George Wright, proceeding *pro se*, commenced the above-captioned action on July 29, 2015, against Defendants Police Officers James Trapasso and Kenneth Greene of the New York City Police Department ("NYPD"). (Compl., Docket Entry No. 1.) Plaintiff's claims arise from his arrest on July 29, 2012. (*Id.* ¶ 8.) Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for excessive force against Officer Greene, (*id.* ¶¶ 66–69), failure to intervene against Officer Trapasso, (*id.* ¶¶ 90–94), denial of the right to a fair trial against Officer Greene, (*id.* ¶¶ 66–89), and failure to provide medical treatment against both Officers Trapasso and Greene, (*id.* ¶¶ 70–73). Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Defs. Mot. for Summ. J. ("Defs. Mot."), Docket Entry No. 34; Defs. Mem. of Law in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 38.) For the reasons discussed below, the Court grants the motion in part and denies it in part.

**I. Background**

The following facts are undisputed unless otherwise indicated. [1]

**a. Traffic stop**

On the night of July 29, 2012, Plaintiff was driving home to Staten Island, New York after dropping off his niece and nephews in the Bronx when Defendants pulled him over. (Dep. of George Wright ("Wright Dep.") 31–34, annexed to Pl. Counter-Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") as Ex. K, Docket Entry No. 40-11.) [2] Defendants were on duty patrolling the area and observed Plaintiff's car without a working passenger side headlight. (Dep. of James Trapasso ("Trapasso Dep.") 9, annexed to Decl. of Erin Ryan ("Ryan Decl.") as Ex. C, Docket Entry No. 37-3.) Defendants stopped Plaintiff at the intersection of York Avenue and Prospect Avenue in Staten Island, and parked their car about one car length behind Plaintiff's vehicle. (*Id.*; Defs. Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs. 56.1") ¶ 5, Docket Entry No. 35.) After being stopped, Plaintiff turned on his car's interior light and rolled down the windows. (Wright Dep. 38–40.) Plaintiff then opened his driver's side door and his knee "might have been sticking from where the door and thing is," but he did not get out of the vehicle. (*Id.* at 40.)

Wright v. Trapasso, Not Reported in Fed. Supp. (2018)

2018 WL 4688940

After Plaintiff opened his driver's side door, Defendants ran to his car and warned him multiple times not to get out. (*Id.* at 41.) Officer Trapasso approached the driver's side of Plaintiff's vehicle while Officer Greene went to the passenger side. (*Id.* at 42.) Defendants gave Plaintiff a "last warning" not to get out of his car. (*Id.* at 41.) Plaintiff asked Officer Trapasso why they stopped him, and Officer Trapasso responded that Plaintiff's "f* *king headlights [were] out." (*Id.* at 42.) Plaintiff responded, "for a headlight violation, this is how you treat me for headlight violation." (*Id.* at 43.) Defendants then asked Plaintiff whether he had been drinking or was under the influence of drugs, which Plaintiff denied. (*Id.* at 44–45.) Defendants requested Plaintiff's license and registration, which Plaintiff provided, and returned to their vehicle to process a summons. (*Id.* at 45.)

**\*2** While Defendants were processing the summons, Plaintiff complained generally about how the Defendants were treating him. (*Id.* at 46.) Plaintiff denied being a drug dealer and complained about being asked whether he was under the influence of drugs or alcohol. (*Id.* at 47.) Although he does not know whether Defendants heard his complaints, Plaintiff admits that his voice "carried." (*Id.*) Plaintiff called 411 with the intention of speaking "with the sergeant to file a complaint," but terminated the telephone call after he was connected to an automated service. (*Id.* at 46–47.)

Defendants returned to Plaintiff's vehicle and issued Plaintiff a summons. (*Id.* at 49.) Plaintiff contends that Officer Greene threw the summons, driver's license, and registration in the vehicle and stated "go f* *king take care of that." (Pl. 56.1 ¶ 17.) Plaintiff told Defendants that they were rude and that it was his right to file a complaint against them. (Wright Dep. 49.) Officer Trapasso told Plaintiff that all of his information was on the summons. (*Id.* at 50.) Plaintiff then requested Officer Greene's information. (*Id.*) Officer Greene pointed to his badge and shield, but aimed his flashlight at Plaintiff's eyes, and the officers immediately walked away from Plaintiff's vehicle. (*Id.*)

While Officer Trapasso was in the police vehicle, and as Officer Greene was returning to the police vehicle, Plaintiff yelled at them about his familiarity with the patrol guide. (*Id.* at 51–52.) Officer Greene told Plaintiff to stop yelling. (*Id.* at 53.) Plaintiff testified at his deposition that Officer Greene told him to "shut the f* *k up if you know what's good for you." (*Id.* at 53.) Plaintiff did not stop yelling. (*Id.*)

### b. Plaintiff's arrest

As Officer Greene was getting into his vehicle, Plaintiff yelled that he was going directly to the precinct to report Officer Greene to his sergeant. (*Id.* at 53.) Officer Greene ran back to Plaintiff's vehicle with his baton in hand and demanded that Plaintiff step out of his vehicle. (*Id.* at 54.) Plaintiff did not get out of the vehicle because he did "not have time to react." (*Id.*) Because the door handle of Plaintiff's vehicle appears not to have been functioning, Officer Greene reached into the vehicle to open the door. (Excerpts from May 7, 2013 Crim. Ct. Testimony of Officer Greene ("Greene Testimony") 8, annexed to Ryan Decl. as Ex. F, Docket Entry No. 37-5.)

Officer Greene then swung his baton at Plaintiff but missed. (Wright Dep. 55.) At the time of the swing, Plaintiff's head, but not his body, was turned toward Office Greene. (*Id.*) Officer Greene then "instantaneously" pepper sprayed the left side of Plaintiff's face, causing Plaintiff to scream.[3] (Pl. 56.1 ¶ 22; Defs 56.1 ¶ 27.) Plaintiff immediately began moving away from Officer Greene toward the passenger side of the vehicle. (Wright Dep. 57.) While Plaintiff was moving toward the passenger side of the vehicle, Officer Greene struck Plaintiff in the back with his hand. (*Id.*) Plaintiff had one hand over the passenger side console where the glove compartment is located and one hand on the passenger side seat. (*Id.* at 59.) As Plaintiff was crossing over from the driver side to the passenger side of the vehicle, he twisted and banged his right knee on the center console.[4] (*Id.* at 58.) Plaintiff had no intention to get out of his car. (*Id.* at 62–63.)

**\*3** While Plaintiff was moving toward the passenger side of the vehicle, Officer Trapasso ran to the passenger side and forcefully removed Plaintiff from the vehicle. (*Id.* at 62.) Officer Trapasso demanded that Plaintiff face the vehicle and lock his fingers behind his head. (*Id.* at 63.) Plaintiff screamed for help as he was removed from the vehicle and searched. (*Id.* at 66–67.)

Wright v. Trapasso, Not Reported in Fed. Supp. (2018)

2018 WL 4688940

After the search, Plaintiff asked for medical attention because his knee was "throbbing" and the pepper spray was "burning" him. (*Id.* at 64–65.) Defendants did not respond to Plaintiff's request for medical attention. (*Id.* at 65.) Plaintiff was handcuffed without resistance, placed in a police vehicle, and transported to the 120th Precinct. (*Id.* at 70–71.)

### c. Plaintiff's request for medical treatment

Plaintiff claims that he requested medical treatment while being transported to the precinct but was told that he needed to wait for the arresting officers. [5] (*Id.*) When Plaintiff arrived at the precinct, Officer Greene removed him from the police vehicle and brought him into the precinct. (*Id.* at 73.) Plaintiff asked Officer Greene why he was being arrested. (*Id.*) Officer Greene responded that "you started punching me, you resisted, you were disorderly, you threatened me and my family." (*Id.*) Shortly thereafter, Plaintiff asked Officer Greene for medical treatment but received no response. (*Id.* at 73–74.) Another officer at the precinct told Plaintiff to "deal with it." (*Id.* at 74.) Plaintiff was booked and charged with resisting arrest, menacing in the third degree, harassment in the second degree, and disorderly conduct. (Arrest Report, annexed to Ryan Decl. as Ex. H, Docket Entry No. 37-7.) The officers fingerprinted, photographed, and placed Plaintiff in a holding cell. (Wright Dep. 80.)

At approximately 5:30 AM the following day, while he was at Central Booking, Plaintiff again requested medical attention due to the effects of the pepper spray. (*Id.* at 80.) An officer told Plaintiff that he would be arraigned "in a couple of hours" and that a request for an ambulance would delay his arraignment. (*Id.*) Avoiding delay of his arraignment, Plaintiff accepted the officer's offer of water and napkins. (*Id.*) Plaintiff did not request any medical treatment again but states that the water caused the effects of the pepper spray to spread. (*Id.* at 80–81.)

### d. Criminal prosecution of Plaintiff

On July 30, 2012, Plaintiff was arraigned on charges of resisting arrest, menacing in the third degree, disorderly conduct, and harassment in the second degree. (Criminal Ct. Certificate of Disposition ("Certificate of Disposition"), annexed to Ryan Decl. as Ex. I, Docket Entry No. 37-8; Wright Dep. 82.) Plaintiff was released on his own recognizance. (Wright Dep. 82–83.) A few days after the arraignment, Plaintiff went to the hospital because of pain in his injured knee. (*Id.* at 86.) X-rays showed inflammation but did not show any tear or damage to ligaments. (*Id.* at 87.) A doctor prescribed medication to reduce inflammation and advised Plaintiff to follow up with his primary care doctor. (*Id.*) Plaintiff did not see his primary care doctor "for a time." (*Id.* at 90.)

In July of 2013, approximately one year after Plaintiff's arrest, a judge in New York state criminal court held a bench trial on charges of attempted assault in the third degree, disorderly conduct, and harassment in the second degree, (Information, annexed to Ryan Decl. as Ex. J, Docket Entry No. 37-9.) Plaintiff, Officers Trapasso and Greene, a witness at the scene, and Plaintiff's character witness, all testified during the proceedings. (Wright Dep. 85–86.) The judge found Plaintiff guilty of disorderly conduct and sentenced him to time served. (*Id.* at 86; Certificate of Disposition.) Plaintiff filed a notice of appeal, but did not prosecute the appeal. (Wright Dep. 9.)

## II. Discussion

### a. Standard of review

**\*4** Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material

Wright v. Trapasso, Not Reported in Fed. Supp. (2018)

2018 WL 4688940

issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) ). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Plaintiff's rule 56.1 counter-statement of undisputed facts

Defendants raise several arguments challenging Plaintiff's 56.1 Statement.

First, Defendants argue that the Court should disregard Plaintiff's objections to several paragraphs in Defs. 56.1 as "disingenuous" because the statements are "supported by [his] own testimony." (Defs. Reply 2 (citing Defs. 56.1 ¶¶ 2, 4, 6–7, 9–12, 14–23, 23–25, 37–39, 41, 43–45, 47, and 51–52).) Defendants argue that "[P]laintiff appears to be calling into question the veracity of his own prior testimony in a blatant attempt to create a disputed issue of fact." (*Id.* at 2.) The Court disagrees. Plaintiff's objections and responses to Defendants' 56.1 statement include additional facts from his deposition, not contradictory facts.

Second, Defendants urge the court to disregard paragraphs in Pl. 56.1 where Plaintiff provides inaccurate, incomprehensible, or unintelligible citations to the record, or no citation at all. (*Id.* at 1–2.) The Court will not disregard factual disputes supported by evidence in the record simply because Plaintiff failed to provide accurate citations. *Sloane v. Getz*, 150 F. App'x 86, 88 (2d Cir. 2005) (finding courts must consider issues of material fact in the record even where a party fails to raise them) (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ). The Court considers Plaintiff's facts, where supported by the record, for the purposes of determining whether a factual dispute exists.

Finally, Defendants argue that "the majority of [P]laintiff's response ... seem[ ] to focus on non-material facts." (Defs. Reply 4.) The Court disregards responses containing nonresponsive narrative. *See Goldstick v. Hartford, Inc.*, No. 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002).

### c. Section 1983 claims

Plaintiff asserts four section 1983 claims, alleging that: (1) Officer Greene violated his Fourth Amendment rights by using excessive force during the course of his arrest, (Compl. ¶¶ 66–69); (2) Officer Trapasso failed to intervene and prevent Officer Greene from violating his constitutional rights, (*id.* ¶¶ 90–94); (3) Officer Greene deprived him of his constitutional right to a fair trial by fabricating evidence and forwarding the evidence to the Richmond County District Attorney's Office, (*id.* ¶¶ 74–89); and (4) Officers Greene and Trapasso violated his constitutional rights by failing to provide medical treatment after Plaintiff was pepper sprayed and injured his knee, (*id.* ¶¶ 70–73).

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted).

Wright v. Trapasso, Not Reported in Fed. Supp. (2018)

2018 WL 4688940

### i. Excessive force claim

**\*5**  Defendants argue that Plaintiff's excessive force claim fails because Officer Greene's use of force was objectively reasonable under the circumstances. (Defs. Mem. 6.)

Plaintiff contends that Officer Greene had "no reasonable justification" for striking him, especially "without provocation." (Pl. Opp'n to Defs. Mot. for Summ. J. ("Pl. Opp'n") 1, Docket Entry No. 39.) [6]

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer" in the course of an arrest. *Tracy v. Freshwater*, 623 F.3d. 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989) ). Because the Fourth Amendment's test is one of "objective reasonableness," the inquiry is fact-specific and requires a balancing of various factors. *Id.* When determining whether the force applied was "excessive," a court must analyze the totality of the circumstances facing the officer and consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citations omitted); *see also Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 463 (E.D.N.Y. 2010) ("[T]he fact finder must consider the totality of the circumstances, including 'the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest.' " (citations omitted) ). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Tracy*, 623 F.3d at 96 (quoting *Graham*, 490 U.S. at 397); *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968) ) ). Courts must therefore "evaluate the record 'from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight.' " *Tracy*, 623 F.3d at 96 (internal quotation marks omitted) (quoting *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) ).

Plaintiff contends that Officer Greene used excessive force when he: (1) attempted to strike Plaintiff's knee with a baton;[7] (2) deployed pepper spray; and (3) made contact with Plaintiff's back, either with his hand or his baton, as Plaintiff was moving towards the passenger side of the car.

**\*6**  Based on the undisputed facts, an evaluation of the relevant factors, and the totality of the circumstances, the Court concludes that a reasonable juror could find that Officer Greene's actions in spraying Plaintiff with pepper spray was excessive.

### 1. Nature and severity of the crimes

The nature and severity of the crimes leading to Plaintiff's arrest do not support the level of force used by Officer Greene. The offenses are relatively minor crimes and violations. (Certificate of Disposition.) [8]  The state formally charged Plaintiff with attempted assault in the third degree, disorderly conduct, and harassment in the second degree, none of which are serious offenses under New York Law. [9]  (Information.) By contrast, Officer Greene used a "significant amount of force," *Tracy*, 623 F.3d at 98, in spraying Plaintiff's face with pepper spray immediately after he attempted to use the baton because his use of the baton did not have its "desired effect." (Defs. Mem. 10.) The nature of the crimes alone do not support the level of force used by Officer Greene.

### 2. Threat to the safety of officers and others

A reasonable jury could find that Plaintiff did not pose an immediate threat to Officer Greene's safety. Although Plaintiff opened the driver's side door and had his knee slightly out of the vehicle immediately after the officers stopped his car, (*id.*

Wright v. Trapasso, Not Reported in Fed. Supp. (2018)

2018 WL 4688940

¶ 6), Defendants told Plaintiff not to get out of his vehicle, retrieved Plaintiff's license and registration, and issued Plaintiff a summons, (*id.* ¶¶ 7–14.) In addition, during the subsequent confrontation between Plaintiff and the officers, Officer Greene was forced to reach into Plaintiff's car to unlock the car door and Officer Trapasso had to physically remove him from the car after Plaintiff refused to exit the vehicle. (*Id.* ¶ 24.) The objective circumstances do not suggest a safety threat that warranted the degree of force used by Officer Greene. Accordingly, a reasonable jury could find that Plaintiff's actions in moving toward the passenger side of the vehicle — *away* from Officer Green — posed no threat to Officer Greene's safety and, as a result, Officer Greene's use of force under the circumstances was excessive. [10]

### 3. Resisting arrest or attempting to evade the officers

**\*7** Construing the facts in Plaintiff's favor, Plaintiff was attempting to get away from Officer Greene to avoid further use of force rather than attempting to evade arrest by flight. Plaintiff moved to the passenger side of the car only after Officer Green sprayed him with pepper spray. Further, the fact that Plaintiff refused to exit his vehicle undermines any claim that he was attempting to flee, and suggests Plaintiff was attempting to get to the passenger seat, away from Officer Greene and the pepper spray.

Moreover, even assuming Plaintiff did resist arrest or attempt to evade the officers, Defendants may nevertheless have used more force than necessary to prevent Plaintiff's flight. Resisting arrest "does not give the officer license to use force without limit." *Sullivan,* 225 F.3d at 166. When a suspect resists arrest, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Id.*

At most, Plaintiff's "resistance" was his refusal to get out of his vehicle. Considering the totality of the circumstances, a reasonable jury could find that deploying pepper spray at Plaintiff was not reasonably related to Plaintiff's refusal to exit his vehicle under the circumstances. [11]

### 4. Plaintiff's injuries are not *de minimis*

**\*8** Defendants argue that Plaintiff's excessive force claim fails because Plaintiff's injuries "are nothing more than *de minimis.*" (Defs. Mem. 13.)

"[T]he extent of injury" is a "relevant" but non-dispositive factor in evaluating an excessive force claim. *Abreu v. Nicholls,* 368 F. App'x 191, 193 (2d Cir. 2010). "[I]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via,* 821 F.2d 913, 924 (2d Cir. 1987). "[A] very minimal injury" may therefore be " 'sufficient to trigger potential liability' for excessive force" under the right circumstances. *Castro v. Cty. of Nassau,* 739 F. Supp. 2d 153, 176–77 (E.D.N.Y. 2010) (citation omitted); *see also Hayes v. N.Y.C. Police Dep't,* 212 F. App'x. 60, 62 (2d Cir 2007) ("[W]e have permitted claims to survive summary judgment where the only injury alleged is bruising" (citations omitted) ).

Plaintiff contends that his encounter with Officer Green left his eyes and skin burning and his right knee inflamed. (Pl. 56.1 ¶ 27.) Plaintiff sought medical care for his right knee two days after his arraignment on criminal charges, and x-rays confirmed inflammation in Plaintiff's right knee. (Wright 86–87.) Plaintiff's alleged injuries are sufficient to allow his excessive force claim to proceed. *Robison,* 821 F.2d at 924 ("While [the plaintiff] did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, the failure is not fatal to her claim."); *Lucky v. City of New York,* No. 03-CV-1983, 2004 WL 2088557, at \*7 (S.D.N.Y. Sept. 20, 2004) (denying defendants' motion for summary judgment on plaintiff's excessive force claim and finding that "[w]hile [the plaintiff's] injuries appear to be *de minimis*, his statements that he was shoved in the police car in a manner that injured his shoulder" created a

Wright v. Trapasso, Not Reported in Fed. Supp. (2018)

2018 WL 4688940

disputed issue of material fact); *Graham v. City of New York*, 928 F. Supp. 2d 610, 618–19 (E.D.N.Y. 2013) (denying summary judgment of the plaintiff's Fourth Amendment excessive force claim where plaintiff complained that he was forcibly removed from his car and handcuffed without justification and, although he experienced no lasting damage, suffered immense pain and swelling); *Laporte v. Fisher*, No. 11-CV-9458, 2012 WL 5278543, at *3–4 (S.D.N.Y. Oct. 24, 2012) (finding that a punch to the plaintiff's stomach which caused him to lose his breath could constitute excessive force if done to harass plaintiff); *Hodge v. Village of Southampton*, 838 F. Supp. 2d 67, 77–78 (E.D.N.Y. 2012) (denying summary judgment where plaintiff was treated for bruising at a hospital and discharged with Motrin).

### ii. Qualified immunity

Defendants argue that they are entitled to qualified immunity because "Plaintiff has not established the violation of a clearly established constitutional right" and in the alternative, the force used by Officer Greene "was clearly reasonable given the circumstances." (Defs. Mem. 22–23.)

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) ).

 **\*9** As to whether the right is clearly established, the "dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) ). "[T]he relevant question ... is ... whether a reasonable officer could have believed [his or her conduct] to be lawful, in light of clearly established law and the information [he or she] possessed." *Moore v. Vega*, 371 F.3d 110, 115 (2d Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ). Thus, "[e]ven if the right at issue was clearly established in certain respects ... an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 165–66 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986) ). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Vega*, 371 F.3d at 114.

"Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder." *Taravella v. Town of Wolcott*, 599 F.3d 129, 135 (2d Cir. 2010) (quoting *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) ); *see also Bonilla v. United States*, 357 F. App'x 334, 335 (2d Cir. 2009) ("Although qualified immunity is a question of law for the [c]ourt, if there are factual disputes that bear directly upon whether it was objectively reasonable for an official to believe that he was acting lawfully, these disputes must be resolved by a jury before the legal question can be addressed." (citing *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) ) ) 225 F.3d 161. Defendants bear the burden of proof to establish that qualified immunity exists. *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012); *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011).

Because freedom from the use of excessive force is a clearly established constitutional right, the remaining question is whether it was objectively reasonable for Officer Green to believe that his actions did not violate Plaintiff's right to be free from excessive force. *See Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (holding that a police officer is immune if he had " 'an objectively reasonable belief that his actions [were] lawful' ") (quoting *Okin v. Village of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 433 (2d Cir. 2009) ).

As discussed above, there are disputed issues of material fact as to whether the force used to arrest Plaintiff was reasonable. For the same reasons as set forth above, the Court finds that there are disputed issues of material fact as to whether a reasonable officer would believe that the force used by Officer Green was not excessive. *See Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir.

**Wright v. Trapasso, Not Reported in Fed. Supp. (2018)**

Case 1:21-cv-01810-JGK   Document 38   Filed 04/26/22   Page 55 of 59

2018 WL 4688940

1999) ("Because the district court could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded.").

Accordingly, the Court denies Defendants motion for summary judgment on the basis of qualified immunity.

### iii. Failure to intervene claim

Defendants argue that they are entitled to summary judgment because there is no underlying constitutional violation. Defendants argue in the alternative that this claim fails because when the allegedly excessive force was deployed, Officer Trapasso was too far from Plaintiff's car to react and therefore did not have a realistic opportunity to intervene. (Defs. Mem. 15–16.)

Plaintiff argues that Officer Trapasso "refused to intervene" while Officer Green used excessive force against him, failed "to report the incident to his superior," and lied about the incident "through the use of written statements and verbal testimonies." (Pl. Mem. 2.) The parties agree that: (1) Officer Trapasso was in the police car when Officer Greene swung his baton and pepper sprayed Plaintiff, (Defs. 56.1 ¶ 36; Pl. 56.1 ¶ 18); (2) while in the police car, Officer Trapasso observed Plaintiff crawl to the passenger side of the vehicle, (Defs. 56.1 ¶ 36); and (3) Officer Trapasso removed Plaintiff from his vehicle through the passenger side door, (Defs. 56.1 ¶¶ 36–37; Pl. 56.1 ¶ 25).

**\*10**   "[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso,* 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases) ). "A police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Jeffreys v. Rossi,* 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) (citing *Ricciuti,* 124 F.3d at 129). An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it." *Figueroa v. Mazza,* 825 F.3d 89, 106 (2d Cir. 2016) (citation omitted); *see also Terebesi,* 764 F.3d at 244.

Construing the facts in the light most favorable to Plaintiff, there is no indication that Officer Trapasso had an opportunity to intervene. The events giving rise to Plaintiff's claim of excessive force appeared to have occurred quickly. After swinging his baton and missing Plaintiff's knee, Officer Greene "instantaneously" deployed pepper spray. (Defs. 56.1 ¶ 27; Pl. 56.1 ¶ 2.) Officer Trapasso then observed Plaintiff crawl to the passenger side of the vehicle. (Defs. 56.1 ¶ 36.) It was during this time that Officer Greene struck Plaintiff's back. (Defs. 56.1 ¶¶ 30–32.) "As Plaintiff arrived in the passenger side of his vehicle, he was immediately removed by Officer Trapasso." (Pl. 56.1 ¶ 25; Defs. 56.1 ¶ 36.) Although Officer Trapasso may have had an opportunity to see some of Officer Greene's actions against Plaintiff, there is no indication that Officer Trapasso had a realistic opportunity to intervene and prevent Officer Greene from using the pepper spray. *See Figueroa v. Mazza,* 825 F.3d 89, 106 (2d Cir. 2016) ("An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it.") The Court therefore grants Defendants motion for summary judgment as to Plaintiff's failure to intervene claim against Officer Trapasso.[12]

### iv. Medical treatment claim

Defendants argue that Plaintiff's claim of deliberate indifference to his requests for medical treatment fails as a matter of law because Plaintiff fails to establish an objectively serious medical condition. (Defs. Mem. 16–17.)

Plaintiff argues that Defendants had an obligation to provide medical treatment and deliberately failed to do so. (Pl. Mem. 3.)

The Due Process Clause of the Fourteenth Amendment governs a pretrial detainee's claim of unconstitutional conditions of confinement. *Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017). In contrast to a convicted prisoner, " '[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner — neither cruelly and unusually nor otherwise.' " *Id.* (alteration in original) (quoting *Iqbal v. Hasty,* 490 F.3d 143, 168 (2d Cir. 2007) ).

 **\*11**  To state a claim of deliberate indifference to medical needs, a plaintiff must allege (1) that he had an objectively "serious medical condition," (the "objective prong") and (2) that this condition was met with "deliberate indifference" on the part of defendants (the "*mens rea*" prong). *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir. 2010). In order to satisfy the objective prong, a plaintiff must establish a serious medical condition by showing "that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.' " *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir. 1998) ). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.' " *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006) (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) ). In order to satisfy the subjective prong, a plaintiff must show that the defendant "acted with at least deliberate indifference to the challenged conditions." *Darnell,* 849 F.3d at 30.

Plaintiff's knee injury and the effects of the pepper spray are not sufficiently serious medical conditions to state a claim for deliberate indifference to his request for medical care. Plaintiff complained of "incredible discomfort" because of the pepper spray. (Pl. 56.1 ¶ 41.) At central booking, Plaintiff was told that an ambulance would delay his arraignment and was offered water and napkins. (Wright Dep. 80.) Instead of delaying arraignment, Plaintiff decided to accept water and napkins and forego medical treatment, undermining any argument that his pain was extreme or that urgent medical care was required. [13] (Defs. 56.1 ¶ 45.) In addition, Plaintiff does not claim any lasting physical injuries from the pepper spray. Plaintiff's "incredible discomfort" as a result of the pepper spray does not rise to the level of seriousness required for a constitutional violation. *See Holmes v. City of New York,* No. 17-CV-3874, 2018 WL 4211311, at \*7 (S.D.N.Y. Sept. 4, 2018) (holding that "the temporary effects of chemical spray are not serious medical needs because they do not rise to the level of producing death, degeneration, or extreme pain"); *Lewis v. Clarkstown Police Dep't.*, No. 11-CV-2487, 2014 WL 1364934, at \*7 (S.D.N.Y. Mar. 31, 2014) (holding that the plaintiff's deliberate indifference claim fails as a matter of law because the temporary discomfort of chemical spray does not constitute a "sufficiently serious" injury).

Plaintiff also claims that he suffered "severe pain" in his knee as a result of Officer Greene's excessive force during his arrest, causing him to seek medical treatment. (Pl. 56.1 ¶ 47.) Plaintiff includes in his submissions several medical reports from the Staten Island Physician Practice for medical visits from June of 2011 to November of 2013, including an urgent care visit on August 2, 2012, a few days after his arrest. (Medical Reports, Docket Entry No. 40-23.) The August 2, 2012 medical report indicates that Plaintiff complained of pain in his right knee, but Plaintiff did not suffer any fracture, dislocation, or other serious injury. Plaintiff also testified at his deposition that he received "some pills for the inflammation and stuff that was going on with my knee." (Wright Dep. 87.) Plaintiff does not complain of any chronic or substantial pain nor does Plaintiff complain of any limitations to his daily activities. Plaintiff's knee injury is also not a serious medical condition as required to state a claim for deliberate indifference to his request for medical care. [14] *See Goodwin v. Kennedy,* No. 13-CV-1774, 2015 WL 1040663, at \*12 (E.D.N.Y. Mar. 10, 2015) ("Courts in this Circuit have consistently held that cuts, lacerations, bruises, and other superficial injuries ... 'are not sufficiently serious to support' a deliberate indifference claim." (citing cases) ).

 **\*12**  Accordingly, the Court grants Defendants' motion for summary judgment as to this claim.

### v. Denial of the right to a fair trial

Defendants argue that "the record is devoid of any evidence, other than [P]laintiff's own self-serving testimony," to show that Officer Greene fabricated evidence that Plaintiff threatened the officers and their mothers. (Def. Mem. 20.) In addition,

Wright v. Trapasso, Not Reported in Fed. Supp. (2018)

2018 WL 4688940

Defendants argue that even assuming Officer Greene fabricated evidence, Plaintiff cannot show that he suffered a deprivation of liberty as a result of the purported fabricated evidence. (*Id.*)

To establish a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Ganek v. Leibowitz,* 874 F.3d 73, 90 (2d Cir. 2017) (quoting *Garnett v. Undercover Officer C0039,* 838 F.3d 265, 277 (2d Cir. 2016) ). Unlike a false arrest or malicious prosecution claim, "probable cause is not a defense to a claim for a denial of the right to a fair trial" based on the fabrication of evidence. *Garnett,* 838 F.3d at 277 (alteration omitted) (citing *Jovanovic v. City of New York,* 486 F. App'x 149, 152 (2d Cir. 2012) ).

A plaintiff need only produce some evidence showing that the officer's statement or evidence is false or manipulated. *See Garnett,* 838 F.3d at 269–70, 279 (holding that the plaintiff's and the officer's conflicting accounts of the events underlying the charges created an issue of fact as to falsity); *Morse v. Fausto,* 804 F.3d 538, 547 (2d Cir. 2015) (holding that the plaintiff's documents showing that the prosecutor omitted material portions of relevant evidence created an issue of fact on falsity); *Jocks v. Tavernier,* 316 F.3d 128, 138 (2d Cir. 2003) (holding that the plaintiff's testimony that the information was false was sufficient evidence to create an issue of fact as to falsity).

A plaintiff can establish a deprivation of liberty through the number of court appearances a plaintiff made post-arraignment, constraints such as bail requirements, a period of incarceration or travel restrictions. *See Singer v. Fulton Cty. Sheriff,* 63 F.3d 110, 117 (2d Cir. 1995); *Arbuckle v. City of New York,* No. 14-CV-10248, 2016 WL 5793741, at \*10–11 (S.D.N.Y. Sept. 30, 2016) (collecting cases). While the number of times a plaintiff was required to appear before a state court bolsters the plaintiff's claim that the plaintiff's liberty was deprived, a lack of numerous court appearances is not dispositive. *See Burg v. Gosselin,* 591 F.3d 95, 98 (2d Cir. 2010) (holding that "[t]he number of appearances may bear upon whether there was a seizure" rising to the level of a deprivation of liberty). A plaintiff may sufficiently establish a deprivation of liberty when he or she is detained before arraignment, required to be available to reappear before the state court at any time and therefore limited in his or her travel after being released from custody, and makes at least one post-arraignment appearance before a state court. *See Insogna,* 704 F.3d at 112 ("We have consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a ... deprivation of liberty." (internal quotation marks omitted) (quoting *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir. 1997) ) ); *Rohman v. N.Y.C. Transit Auth.,* 215 F.3d 208, 216 (2d Cir. 2000) (holding that a plaintiff established a deprivation of liberty where the conditions of post-arraignment release required him to remain available to return to court and therefore remain in the state); *Norton v. Town of Islip,* No. 12-CV-4463, 2016 WL 264930, at \*4 (E.D.N.Y. Jan. 21, 2016) ("[W]hat the Second Circuit found most salient ... was ... the obligation to return to court whenever an appearance is requested, with its attendant travel restrictions and not the number of post-arraignment court appearances required of the criminal defendant."); *cf. Burg,* 591 F.3d at 98 (holding that "the issuance of a pre-arraignment non-felony summons requiring a later court appearance, without further restrictions, does not constitute a ... seizure"); *Arbuckle,* 2016 WL 5793741, at \*11 (finding that "merely having to respond to orders of the court is insufficient [alone] to allege a deprivation of liberty").

**\*13** Officer Greene does not dispute that he is an investigating officer, that he forwarded information about Plaintiff's arrest to the DA's office, or that the evidence was likely to influence a jury's verdict. (*See generally* Defs. Mem.)

### 1. Fabricated evidence

During Plaintiff's criminal trial, Officer Greene testified that, during the traffic stop, Plaintiff yelled, "I'm going to f\* \*king get you and your mothers. F\* \*k you." (Greene Testimony 16.) Defendants also included this statement in Plaintiff's arrest report. (Arrest Report.) Officer Greene also testified that Plaintiff attempted to hit him. (*Id.*) Plaintiff denies making this statement and denies attempting to assault Officer Greene. (Wright Dep. 73–74.) Thus, there exists a material dispute as to whether Plaintiff made the alleged statement or attempted to hit Officer Greene, precluding summary judgment.

Case 1:21-cv-01810-JGK   Document 38   Filed 04/26/22   Page 58 of 59

Wright v. Trapasso, Not Reported in Fed. Supp. (2018)

2018 WL 4688940

### 2. Deprivation of liberty

Plaintiff has established a deprivation of liberty based on his post-arraignment court appearances. Plaintiff was required to appear in court multiple times. (Wright Dep. 85.) In addition, Plaintiff was arrested and arraigned in July of 2012, his bench trial began in July of 2013 (Wright Testimony 1, Docket Entry No. 40-4), and he was convicted in October of 2013, (Certificate of Disposition), over one year after his criminal court arraignment. Plaintiff has established deprivation of liberty. *See Naim v. City of N.Y.*, No. 10-CV-912, 2012 WL 2923308, at *3 (E.D.N.Y. July 18, 2012) (finding deprivation of liberty because Plaintiff was required to return to court following arraignment and "he was necessarily subject to travel restrictions when he was released on his own recognizance in New York State").

Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiff's denial of a fair trial claim.

### III. Conclusion

For the foregoing reasons, the Court denies (1) Defendants' motion for summary judgment as to Plaintiff's excessive force and denial of a fair trial claims against Officer Greene, and (2) grants Defendants' motion for summary judgment as to the failure to intervene claim against Officer Trapasso and failure to provide medical treatment claim against Officer Greene and Officer Trapasso.

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2018 WL 4688940

### Footnotes

1    Defendants adopt Plaintiff's version of events for purposes of this motion. (Defs. Reply Mem. in Supp. of Defs. Mot. for Summ. J. ("Defs. Reply") 4, Docket Entry No. 41.)

2    When citing to Plaintiff's deposition testimony, the Court will cite to the full transcript provided by Plaintiff with his Rule 56.1 Statement.

3    The pepper spray ended up on several parts of Plaintiff's body, including along the left side of his face, in his nostril, mouth, ears, on the side of his neck and on the back of his head. (Wright Dep. 60:15–18.)

4    Six months prior to this incident, Plaintiff underwent surgery to his right knee, and at the time of this incident, his knee was still healing. (Wright Dep. 68.)

5    Two unnamed officers transported Plaintiff to the precinct. (*Id.* at 71.)

6    Because Plaintiff's Memorandum of Law in Opposition to the Motion is not consecutively paginated, the Court refers to the page number assigned by the Electronic Case Filing ("ECF") System.

7    Defendants argue that this alleged use of force without any physical contact is not sufficient to sustain a claim for excessive force. (Defs. Mem. 7.) The Court acknowledges that "the Second Circuit has never before recognized" excessive force claims "where no physical contact occurred." *Easton v. City of New York*, No 05-CV-1873, 2009 WL 1767725, at *4 n.5 (E.D.N.Y. June 23, 2009). Since Plaintiff alleges other uses of force that did involve physical contact, the Court declines to decide whether Officer Greene's action in attempting to strike Plaintiff with his baton is alone sufficient to sustain a claim for excessive force.

Wright v. Trapasso, Not Reported in Fed. Supp. (2018)

Case 1:21-cv-01810-JGK   Document 38   Filed 04/26/22   Page 59 of 59

2018 WL 4688940

8   Neither party submitted the criminal court complaint filed against Plaintiff. The Court relies upon the state court Certificate of Disposition that lists the arraignment charges. (Criminal Ct. Certificate of Disposition ("Certificate of Disposition"), annexed to Ryan Decl. as Ex. I, Docket Entry No. 37-8; Wright Dep. 82.)

9   The most serious arrest charge is attempted assault in the third degree, which is a misdemeanor with a maximum punishment of one year in jail. N.Y. Penal Law § 110/120.00. The offense for which Plaintiff was ultimately convicted, disorderly conduct, is considered a "violation" and not a crime under New York law, with a maximum punishment of fifteen days in jail. N.Y. Penal Law § 240.20.

10   Defendants argue that because Officer Greene did not know whether Plaintiff was attempting to flee from the car or reach for a weapon, his actions of moving toward the passenger side of the vehicle posed a potential danger to Officer Greene's safety. (Defs. Mem. 10.) However, it was Officer Greene's action in deploying the pepper spray that caused Plaintiff to scream and move towards the passenger side of the vehicle. Thus, Plaintiff's actions after being pepper sprayed cannot justify Officer Greene's use of the pepper spray in the first place.

11   Asserting a theory of collateral estoppel, Defendants argue that Plaintiff's conviction for disorderly conduct precludes him from arguing that he did not engage in "fighting, and violent, tumultuous and threatening behavior during his interaction with the defendant officers." (Defs. Mem. 9.)
The doctrine of collateral estoppel "applies when § 1983 plaintiffs attempt to relitigate in federal courts issues decided against them in state criminal proceedings." Allen v. McCurry, 339 U.S. 90, 102 (1980). To apply, (1) the issues in both proceedings must be identical; (2) the relevant issues must have been actually decided and litigated in the prior proceeding; (3) there must have been a full and fair opportunity for the litigation of the issues in the prior proceeding; and (4) the issues were necessary to support a valid and final judgment on the merits in the prior proceeding. Central Hudson Gas & Elec. Co. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995). "Collateral estoppel requires a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted, and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits." Brown v. New York State S. Ct. for Second Jud. Dist., 680 F. Supp. 2d 424, 428 (E.D.N.Y. 2010) (quoting Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000) ). Based on the record, the Court cannot conclude that the state court judge found that Plaintiff "engaged in fighting, and in violent, tumultuous and threatening behavior" during his interaction with Defendants. It is unclear what conduct gave rise to Plaintiff's disorderly conduct conviction. The Information filed against Plaintiff states that Plaintiff "in the Borough of Staten Island, County of Richmond, City and State of New York, on July 29, 2012, with the intent to cause public inconvenience, annoyance or alarm or recklessly causing a risk thereof, engaged in fighting, and in violent, tumultuous and threatening behavior." (Information.) There is no evidence before the Court as to what conduct on the part of Plaintiff the state court judge found beyond a reasonable doubt, to constitute disorderly conduct. Moreover, even if Plaintiff "engaged in fighting, and violent, tumultuous and threatening behavior during his interaction with the [D]efendant officers," (Defs. Mem. 9), the sequence of events is unclear and Plaintiff may nevertheless be able to establish that the officer's use of force was excessive, regardless of Plaintiff's conduct. See Gardner v. Robinson, No. 16-CV-1548, 2018 WL722858, at *4 (S.D.N.Y. Feb. 6, 2018) ("Plaintiff may establish that Defendants' alleged use of force was excessive" even if he engaged in fighting, and violent, tumultuous and threatening behavior "at some point during the arrest." (citing Harley v. Suffolk Cty. Police Dep't, No. 09-CV-2897, 2012 WL642431, at *9 (E.D.N.Y. Feb. 28, 2012) ) ).

12   Plaintiff also argues for the first time in his Opposition to the motion that Officer Trapasso failed to intervene by not reporting "the incident to his superior." (Pl. Mem. 2.) To the extent Plaintiff attempts to raise a claim under section 1983 for "failure to report," the Court declines to consider such a claim. Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010) (affirming district court's decision not to consider claim raised for the first time in opposition to summary judgment).

13   Although not required, Plaintiff also did not submit any evidence that he sought medical attention for the effects of the pepper spray after he was released on his own recognizance.

14   Because Plaintiff cannot show that the medical conditions for which the officers allegedly denied him medical treatment were sufficiently serious, the Court declines to determine whether Plaintiff can satisfy the second prong.

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.